99 So.2d 108

Thomas Jefferson KENDRICK

v.

C. N. MASON, d/b/a C. N. Mason Company, et al.

No. 43152.

Jan. 6, 1958.

Rehearing Denied Feb. 10, 1958.

J. M. Henagan, Jena, C. D. Moss, Winn-
field, for Thomas Jefferson Kendrick,
plaintiff-appellee.

Provosty, Sadler & Scott, LeDoux R. Provosty, Alexandria, for C. N. Mason, defendant-appellant.

Stafford & Pitts, Alexandria, for United States Fidelity & Guaranty Co.

SIMON, Justice.

Thomas Jefferson Kendrick sought to recover damages for the complete loss of his residence and its entire contents occasioned by a gas explosion and resulting fire allegedly caused by acts of negligence of the defendants herein named.[1]

Plaintiff itemized his damages in the sum of $40,000, as follows:

Complete loss of residence by explosion and fire .................. $20,000
Complete loss of all contents in said residence by fire and explosion, including furniture, fixtures, clothing, personal effects and other personal property ............. 15,000
Rent paid and to be paid, and inconvenience to be suffered while being forced to await the acquisition of another home ............ 5,000

Total Damages          $40,000

Kendrick caused a writ of attachment and garnishment to issue against funds in the sum of $17,972.64 in the hands of the defendant, the Town of Jena, which sum was due to Mason as a credit balance for work performed in the installation of the sewerage system, and was ordered by the court to be delivered to the Sheriff for the Parish of La Salle and held in escrow pending the determination of this suit.

Plaintiff detailed the circumstances surrounding his alleged loss to be as follows:

On September 25, 1953, the Town of Jena contracted with C. N. Mason for the installation of a sewerage collection system in the said municipality. Under the terms of the contract Mason obligated himself to indemnify the Town of Jena for any injuries or damages caused by him in its performance. The system was designed by F. P. Joseph Associated Engineers, which firm furnished all plans and specifications therefor and supervised its construction and installation.

The United States Fidelity & Guaranty Company issued an insurance policy to Mason covering damages caused by him to the maximum extent of $15,000. However, under the express terms of the contract Mason was obligated to maintain coverage of this type to the extent of $25,000.

Work under the contract began on November 1, 1953 and on December 14, 1954,

1. C. N. Mason, doing business as C. N. Mason Company; United States Fidelity & Guaranty Company; F. P. Joseph Associated Engineers, a partnership composed of F. P. Joseph, H. B. L'Heureux and E. F. Harris; and Town of Jena.

the installation of the sewerage collection system was accepted by the municipality as completed. By supplemental agreement between the parties Mason was relieved of the obligation to repair and resurface the streets damaged in the course of the work, the Town of Jena assuming this obligation.

During the performance of the contract Mason and his employees dug the trenches and laid the sewer lines, and in the course of this operation the natural gas lines which had been previously installed in the Town of Jena were cut or punctured at various places. No effort was made by Mason to repair these cut and damaged gas lines and therefore natural gas was permitted to flow and escape therefrom unchecked.

On or about January 20, 1955, the plaintiff caused his residence to be connected to this newly installed sewerage system. On January 26, 1955, A. L. McDonald, a plumber doing business in Jena, was called to the Kendrick home to repair a leaking water pipe. While there he and his helper, Harvey A. King, were requested to check the bathroom for the source of a foul odor detected therein by members of the Kendrick family and thereupon discovered gas flowing into the residence from the attachment of the commode to the sewer line. McDonald then concluded that this odor came from escaping sewer gas. As a precautionary measure McDonald warned petitioner and his family to refrain from lighting heaters or striking matches near the bathroom until the gas leak had been repaired. On the following morning of January 27, 1955, King alone returned to petitioner's residence to correct and eliminate this prevailing condition. King disconnected the commode from the floor, resealed it to the sewer pipe; and as he fastened the last bolt attaching the commode to the floor, the gas which had accumulated in the sewer pipe and in the house exploded resulting in a total loss of the house and all its contents by fire. King was injured and severely burned by this explosion and fire. He was hospitalized for twelve days for treatment for first, second and third degree burns and was incapacitated for several days after his discharge from the hospital. It was asserted by him that the severity of the burn sustained to his right hand has resulted in a measure of disability in the performance of his regular occupation.

After the fire burned its course a blue flame 18 or 20 inches high and about four inches in diameter continued to burn from the sewer opening where the commode had been attached.

Kendrick and King filed separate suits against the defendants hereinabove named, Kendrick for recovery of the loss and property damages as heretofore itemized and King for recovery of damages for personal injuries. Appeals were perfected in both cases, to this Court in the Kendrick case and to the Court of Appeal, Second Circuit,

in the King case. We granted writs [2] in the latter to be consolidated with the Kendrick case for final adjudication.

Defendant Mason answered plaintiff's petition and generally denied liability and averred that the negligence of the Town of Jena, in having accepted as completed and taken possession and use of the public work, was the proximate cause of the tort alleged rendering it alone liable to plaintiff herein. In the alternative Mason averred that the compensatory liability, if any, rests with his insurer, United States Fidelity & Guaranty Company, under a comprehensive general liability policy which indemnifies Mason within the policy limits against such claims as herein asserted. In the further alternative Mason pleaded contributory negligence on the part of plaintiff and his agents, McDonald and King.

United States Fidelity & Guaranty Company also generally denied liability as Mason's insurer for the alleged tort, contending that its policy indemnified Mason's liability for only such damages occurring during the progress of the performance of the work covered by the contract. It contended that the accident giving rise to this suit occurred after the completion and acceptance by the Town of Jena of the public work called for by the contract and therefore fell beyond the terms of its policy, relieving it from any asserted liability.

In the alternative the insurer also pleaded contributory negligence on the part of plaintiff due to his failure to have notified the officials of the Town of Jena of escaping natural gas finding its outlet into his residence through the sewer line, a dangerous condition known to him during the week or ten day period prior to the explosion.

All of the defendants filed exceptions of no cause or no right of action. The trial judge sustained these exceptions of no cause or right of action filed by F. P. Joseph Associated Engineers. All exceptions filed by the remaining defendants were overruled.

After trial on the merits judgment was rendered in favor of plaintiff, Thomas Jefferson Kendrick, and against the defendants, Mason and his insurer, individually and in solido, in the sum of $29,500, with 5% per annum interest thereon from date of judicial demand until paid, together with all costs. The judgment further ordered that the sums of $4,500 and $2,500 of the amount awarded, including interest, inure to the Pacific National Fire Insurance Company and the St. Paul Fire & Marine Insurance Company, respectively, in full satisfaction of the subrogation rights enjoyed by said insurance companies, for having paid to plaintiff the full amount of the policies issued by them covering the destroyed property. The judgment further decreed that the amount of the judgment rendered herein against the United States Fidelity & Guaranty Company be limited to the sum of $15,000 being the maximum limit of its

2. King v. Mason, 234 La. 299, 99 So.2d 117.

liability under the terms of the policy. The writ of attachment was maintained and the sheriff was ordered to deliver to the plaintiff the sum of $17,972.64 previously surrendered by the Town of Jena, garnishee. Judgment was also rendered absolving the Town of Jena from any and all liability in the premises.

We observe from a statement contained in plaintiff's brief that the Sheriff of La Salle Parish delivered to the plaintiff the garnisheed funds, of which amount plaintiff delivered to Pacific National Fire Insurance Company the sum of $4,500 and to St. Paul Fire & Marine Insurance Company the sum of $2,500, in compliance with the decree of the lower court.

From said judgment the defendant United States Fidelity & Guaranty Company perfected a suspensive appeal and defendant C. N. Mason, the contractor, perfected a devolutive appeal.

The material facts forming the basis of this suit, the contract, its terms and conditions, its completion and acceptance, and the relation of the parties litigant thereto are not seriously disputed.

The record discloses that the officials of the Town of Jena were under a first impression that the explosion and resulting fire had been caused by sewer gas. Further investigation by its consulting engineer, F. P. Joseph, disclosed that the accident had been caused by the explosion of natural gas.

Thereupon the sewer line leading to the Kendrick residence was uncovered in order to ascertain the source from and the manner in which natural gas had found its way into the Kendrick sewer line. At a point about 500–600 feet from the Kendrick home, where the gas line crosses the sewer line, the gas line was discovered to be severed and allowed to remain unrepaired. Thereafter an investigation of the Kendrick fire and explosion resulted in findings of such a nature by the State deputy fire marshal that an immediate exploration of the whole gas system for other similar breaks was made resulting in the uncovering of five or six additional gas lines which had been similarly damaged and left unrepaired, with the consequent escape therefrom of natural gas.

The record discloses that prior to the Kendrick explosion and fire the superintendent of the gas and water system of the Town of Jena had unearthed from fifteen to twenty other breaks cut or punctured in the gas line which had been left unrepaired. One of the gas lines so uncovered had been repaired by the simple clamping of a rubber innertube thereon, a method of repair acknowledged to be ineffective and dangerous. An inspection of the quantity of gas purchased and resold by the Town of Jena disclosed a loss through leakage of approximately 20,000,000 cubic feet. Water lines were also found to be damaged in the laying of this sewer line.

Mason did not deny that gas lines were cut during the performance of his contract and he testified that he had knowledge that some were struck and cut, but contended that such was incidental to and unavoidable in the construction of any sewer system. He further testified that though it was the obligation of the Town of Jena to inform him of the location of the gas lines it was his responsibility to rectify any damaged lines and reconstruct them to their former condition while constructing the sewer system, with the corresponding obligation to refill and cover the trenches in connection with said work.

■ Under the circumstances of this case we are convinced, as was the lower court, that the acts of Mason, or his employees for whom he was responsible, in failing to repair and reconstruct the gas lines cut and severed thereby permitting gas to flow unchecked therefrom and in further concealing this dangerous condition when he refilled and covered the sewer trenches constituted gross negligence and the sole and only cause of the explosion with its resulting injury and damages, rendering him liable therefor.

■ We cannot abide Mason's contention that the acceptance by the Town of Jena of the sewer system on December 14, 1954, operated as an absolution from all liability for damages or injuries suffered as the result of the negligent acts committed by him during the performance of his contracts. He relies upon a general rule of law cited in 14 R.C.L. Sec. 42 which absolves an independent contractor from liability for injuries to a third person occurring after the contractor has completed the work and delivered it to the owner or employer and the same has been accepted by him, though the injury resulted from the contractor's failure to properly discharge the obligations of his contract.

We are mindful that this general rule, however, is subject to recognized limitations which continue the liability of the contractor even after he had parted with control over the work, as for instance, when the finished work or product is a nuisance, or where it is delivered by the contractor in a manner so negligently defective as to be imminently and inherently dangerous to third persons. See 14 R.C.L. Sec. 42; Schott v. Ingargolia, La.App., 180 So. 462 and Ortego v. Caldwell, La.App., 77 So.2d 151. We granted writs in the latter and recognized the said general rule and principle in Ortego v. Caldwell, 229 La. 907, 87 So.2d 124.

In 27 Am.Jur., pp. 535–536, Title "Independent Contractors", Section 56, exceptions to the said general rule by which the liability of a contractor continues or exists even after he has parted with his control over a stipulated work are classified and summarized, as follows:

"In other words, a right of action against an independent contractor for injuries to third persons from defects in completed works may be predicated upon the ground that the finished work is a nuisance, or that there has been fraud, misrepresentation, an implied warranty, or an implied invitation. Furthermore, a contractor may be liable where he turns over work which is inherently or intrinsically dangerous, or, in other words, where the work is turned over in a manner so negligently defective as to be imminently dangerous to third persons; * * *."

In the instant case Mason knew that in the installation of the sanitary sewer system contact would be had with the natural gas mains and service lines previously installed by the Town of Jena. It is common knowledge that natural gas is violently explosive and inherently dangerous when permitted to escape freely and uncontrolled and without any measure of restraint for use in beneficent purposes. Mason knew or should have known that uncontrolled natural gas seeks the path of least resistance and that when an outlet such as a sewer line is available, as in this case, it would naturally and normally enter through said lines into homes and other structures connected therewith causing such sensitive perils endangering life and property as has been made evident here. Mason was charged with the duty to exercise every care and caution to prevent the unrestricted escape of this inherently dangerous substance. When he severed the gas mains and service lines and concealed this fact by refilling the sewer trenches, without first repairing and constructing the damaged gas lines, said act constituted gross negligence unquestionably productive of the resulting explosion and damages.

LSA–C.C. Art. 2315 provides that: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it, * * *"

LSA–C.C. Art. 2316 provides that: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

By these articles plaintiff is entitled to be indemnified by Mason for damages sustained as the result of his negligent and imprudent acts committed in the performance of his contract. The obligation imposed thereby is unconditional and unequivocal. Whatever damage one may cause or occasion to another obliges the actor to repair it. This duty is not contingent upon the condition that the injury be inflicted or damage be done prior to completion of the work undertaken or its acceptance by the owner. Manifestly, these codal articles do not comtemplate conditional responsibility, and to so hold, as Mason seeks to have us

do, without supporting authority, would be violative of the positive and all inclusive language employed in these articles. In view of these positive laws we find it unnecessary to refer to the great weight of authority of other jurisdictions upholding the continuation of a contractor's liability to third persons as well as to the contractee after the completion and acceptance of the work undertaken.

■■■ In an alternative effort to avoid personal liability Mason contends that in the event he should be cast for the tort herein committed that the liability rests with his insurer. However, the insurer denies liability primarily on the ground that its policy does not cover Mason's liability for nor does it extend to injuries or damages sustained subsequent to the performance of the contract and the acceptance of the work by the Town of Jena in that its policy specifically excluded coverage of accidents occurring after the completion of the work undertaken, which coverage though offered to Mason was disclaimed by him.

The insurer contends that the policy affords coverage only as is indicated by specific premium charges in a table wherein the coverages, the limits of liability and the advanced premiums are shown. Its defense is based upon certain provisions of exclusions and exceptions provided in the policy and upon definitions of those terms.

It must be observed that neither the accident nor the damage resulting therefrom was caused by the sewer system itself, that is, the finished product, but was the direct result of the tort committed by Mason during the performance of his contract and during the life and term of the policy issued by the insurer.

The insurer contends that Mason purchased only ordinary operations coverage, paying no premium for products or completed operations protection; that his coverage protected him only as against accidents which occurred during the progress of the work and that accidents occurring after the completion of the work were not covered. In other words, the insurer contends that the dividing line between liability and nonliability under the policy is the moment of completion or abandonment of the work covered.

The insurer further contends that accidents occurring during the progress of the work and accidents happening after completion of the work are distinctively different risks, carrying separate and distinct premium rates, and that an accident occurring during the course of the work covered is an operation risk and one occurring after completion is a products or completed operations risk for which Mason is not covered, having declined same.

In the matter of King v. Mason, supra, on rehearing, the Court of Appeal, Second

Circuit, 95 So.2d 705, 717, correctly analyzed and construed the provisions of the policy in question, particularly in reference to those dealing with the exceptions and exclusions relied upon by the defendants, and we feel justified in adopting the following excerpts therefrom as our own:

"As the policy is not a statutory policy, the insurance liability is only such as is provided in the contract and in the endorsements attached thereto. Accordingly, the parties are at liberty to select the types of risks to be covered, the limits of liability and any other provisions not contrary to public policy.

"Notwithstanding the general comprehensive coverage afforded during the term of one year specified in the policy, the insurer contends its liability does not extend to injuries sustained or damages inflicted after the performance of the contract and the acceptance of the work by the owner or contractee. The work performed in the instant case was accepted as complete by the Board of Aldermen as the governing authority of the municipality through a resolution adopted December 13, 1954. The explosion and fire in which plaintiff sustained injuries occurred January 27, 1955. This defense is based upon certain provisions, exclusions and exceptions provided in the policy and upon definitions defining those terms.

"The policy provides that insurance is afforded only with respect to coverages as are indicated by specific premium charges in a table wherein the coverages, limits of liability and advance premiums are shown. Under coverage designated 'A. Bodily Injury Liability', limits of liability are given for each person and for each accident, but no amount being specified for *'Aggregate Products'*, a subdivision listed under the aforesaid general liability provision, but preceding those words are typed the words 'Not Wanted'. Neither was any premium specified for that designated liability. Also, attached to the policy was an endorsement wherein an agreement was recited that the policy did not apply to the *'Products Hazard'* as defined in the policy. This terms is defined as follows:

" '(f) Products Hazard. The term 'products hazard' means

" '(1) The handling or use of, the existence of any condition in or a warranty of goods or products manufactured, sold, handled or distributed by the Named Insured, other than equipment rented to or located for use of others but not sold, if the accident oc-

curs after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured or on premises for which the classification stated in Division (a) of the declarations or in the Company's manual excludes any part of the foregoing;

" '(2) operations, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the Insured, except (a) pickup and delivery, (b) the existence of tools, uninstalled equipment and abandoned or unused materials and (c) operations for which the classification stated in Division (a) of the declarations or in the Company's manual specifically includes completed operations; provided, operation shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement.'

"The first part of this definition is conceded to apply or refer to the warranty of goods or manufactured products, but it is argued that the second part of the definition has reference to contractors. We do not think the language of the contract and the endorsements and documents attached thereto warrant the conclusions urged as to this part of the definition; at least, the language used leaves the meaning vague, obscure and indefinite and it cannot be said, on this score, the policy is free from ambiguity.

"We shall now endeavor to point up some of the reasons for the conclusions reached. In the first place, we have searched in vain for a definition of the term 'Aggregate Products' Liability, which would appear to have been excluded on the face of the policy where the coverages are designated by inserting the amount of premium therefor. We infer from counsel's approach of the matter that possibly 'Aggregate Products' Liability and 'Products Hazard' are one and the same thing. We find nothing in the policy or the endorsements thereon that would support this contention or justify such a conclusion.

"Moreover, in the Schedule of Declarations attached to the policy, under section (d) 'Products (Including Completed Operations)', upon which defendant insurer relies under the endorsement typed therein 'Not Wanted', we find in the column headed 'Premium Bases' the word 'sales', and under the following column for 'Rates' for coverages 'A' and 'B', which are, respec-

tively, bodily injury and property damage liabilities provided in the policy, these words 'Per $1,000 of Sales'. That indicates, without serious room for doubt, the language refers to sales of products, goods, wares or merchandise as by the manufacturer or producer as the premiums are scheduled on the amount of sales.

"The aforesaid section of the Schedule of Declarations contains the notation 'See Endorsement C & L 928–B', the pertinent part of which reads as follows:

" 'It is agreed that the policy does not apply

" '1. To the products hazard as defined in the policy;

" '2. To a warranty of goods or products within the policy definition of the word "contract" if the accident occurs after the Insured has relinquished possession thereof to others and

" '(a) away from premises owned, rented or controlled by the Insured, or

" '(b) on such premises for which the classification stated in division (a) of the declarations or in the Company's manual excludes any part of such products hazard.'

"In all probability, from a fair interpretation of the exclusion just re-

ferred to, the endorsement pertains to and excludes injuries arising out of the handling or use of products, goods, wares, or merchandise sold or rented if the insured has relinquished possession thereof to others and away from the premises owned, rented or controlled by the insured or on the premises for which the classification stated in Division (a) of the declaration excludes 'any part of the foregoing', which could only mean the handling of goods or products of some kind.

"The defendant Mason handled no products, meaning 'goods or products' manufactured, sold or distributed. He, therefore, did not want or need the coverage. The reference to the accident occurring after the operations have been completed and abandoned at or away from premises owned, rented or controlled by the insured means nothing more than the accidents occurring by reason of handling of products or goods, after any agreement to sell, rent or deliver the goods has been completed or the goods have been abandoned."

· It is significant that the policy contract does not recite that any of these exclusions pertains to or refers to contractors who have no products for sale but who have performed a contract for the installation of a public utility, as in the instant case,

or even the erection of any structure, public or private; whereas the policy does specifically recite that the assured, C. N. Mason, is a sewer and water main contractor. By no means of interpretation known to us can it be positively asserted that the exclusions in the policy and the endorsements attached thereto referred to contractors, and we deem it the fundamental duty of the insurer to express clearly the limitations of its obligation.

We find our conclusion amply supported by the case of Smith v. United States Fidelity and Guaranty Company, 1942, 142 Neb. 321, 6 N.W.2d 81, 83, wherein the following exclusion clause employed by the insurer relieved it of liability:

"This policy shall not cover loss from liability for, or any suit based [there] on, injuries or death; * * * (4) Caused by accidents occurring after final completion of the work performed by the insured at the place of occurrence of such accidents."

It is clearly apparent that in that cited case the exclusion clause covered completed operations of a work performed under a contract. Certainly this clause clearly expressed the insurer's non-liability for accidents occurring after completion of the work. In the instant case the exclusions and exceptions relied upon by the insurer to escape liability were not stated with clearness and precision, thereby defining the limits of its obligation therein. An analysis of the exclusion and exceptions therein clearly demonstrates an ambiguity and vagueness which under our well settled jurisprudence must be construed against the insurer. See Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111, wherein general principles in the interpretation of insurance contracts are enunciated.

We are constrained to conclude that the liability exclusion provisions of the policy herein issued by the defendant to Mason are inapplicable herein for the reason that Mason handled no products but was engaged solely as a contractor and the exclusion provisions of the policy have no application to the construction work performed by him. The policy was issued to fully protect Mason against liability for acts of negligence committed by him during his performance of the contract. The tort which was the proximate cause of the damages sustained by plaintiff was in fact and in law committed during the performance of the construction contract. Both the accident and the injuries resulting therefrom were brought about not from the completed and accepted sewer system but from the direct result of the acts of negligence committed during its construction. The policy covering said accidents for which premiums were charged was then in full force and effect; and the conclusion is in-

escapable that the insurer is therefore liable in solido with its insured, Mason.

In his reasons for judgment the trial judge stated that the testimony as to the value of the furniture lost showed same to be valued from $15,000–$16,900 and upon taking into consideration the testimony by plaintiff that some of the items in two rooms were owned by persons other than himself, concluded that the loss sustained did not exceed $12,000 for furniture, and on the question as to the value of the house itself from testimony to the effect that the house was worth from $16,000–$20,813.96 the trial court concluded that the value as to loss in the amount of $17,500 to be reasonable and not excessive.

Although the defendants disagree with the conclusion of fact reached by the trial court they offered no refutation or rebuttal of the testimony upon which the court based its conclusion.

From a review of the evidence relied upon by the district judge in fixing the amount of damages to be awarded to plaintiff we find no justification for a disturbance of the findings reached by him.

The contention that the Town of Jena was solely responsible for the damages suffered by plaintiff as the result of

having accepted the works performed by Mason and having assumed full responsibility to resurface those portions of the streets in which trenches were dug is without merit. We find no showing in the record that the sewer system was defective, but on the contrary that it was a good and workable system. The testimony of F. P. Joseph, consulting engineer for the Town of Jena, is to the effect that the system was a workable and usable one in accordance with the plans for its construction. There is not a scintilla of evidence in the record to show that the Town of Jena had neither actual nor constructive knowledge of the negligent acts of the contractor nor any reason to suspect the dangerous condition created thereby. We find no error in the judgment relieving it from any responsibility or liability for the occurrence of the accident from which plaintiff sustained damages. See *King v. Mason*, La.App.2d Circuit, 95 So.2d 705.

The contention that the plaintiff and/or his agents, McDonald and King, were contributorily negligent such as to bar plaintiff's recovery was also correctly determined by the trial judge to be without merit, there being no evidence to sustain said plea.

Accordingly, for the reasons assigned, the judgment is affirmed.