**RAFINER ELEVATOR WORKS, INC.,**
**Appellant,**

**v.**

**MICHIGAN MUTUAL LIABILITY**
**COMPANY, Respondent.**

**No. 51267.**

Supreme Court of Missouri,

En Banc.

July 12, 1965.

Rope, Shanberg & Rope, Herbert M. Rope, Sherman L. Gibson, Kansas City, for appellant.

Robert S. McKenzie, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for respondent.

HOLMAN, Judge.

Plaintiff filed this suit in an effort to recover the amount expended in the successful defense of a damage suit. It contends that defendant was obligated to make the

defense under the terms of a comprehensive general liability policy of insurance issued to plaintiff by defendant. It is agreed that the aggregate amount of the attorney fees and costs involved is $1,387. A jury was waived and the case was submitted to the trial court upon an agreed statement of facts. The court entered judgment for defendant. Plaintiff appealed and the Kansas City Court of Appeals adopted an opinion affirming the judgment. Upon application of plaintiff we transferred the case here because the opinion appeared to be in conflict with the opinion in Kissel v. Aetna Casualty & Surety Co., Mo.App., 380 S.W.2d 497, which had been adopted by the St. Louis Court of Appeals a short time before. The Kissel case had not been published at the time this case was submitted and was not called to the attention of the Kansas City Court of Appeals.

Plaintiff was engaged in the business of manufacturing, repairing, and servicing elevators. At the time of and prior to the accident here involved plaintiff was a party to a written elevator service agreement with the Friedman Meat Company which owned the building at 524 Walnut Street in Kansas City. Under the terms of that agreement plaintiff was obligated (for a fee of $6 per inspection) to make periodic bimonthly inspections of the freight elevator in that building and to clean, oil, and grease the machinery involved, and to make necessary minor adjustments if such could be made in less than 30 minutes on regular inspection days. Plaintiff's employee inspected the elevator on November 19, 1959. Thereafter, on December 17, 1959, one John W. Rowe, an employee of Friedman, was allegedly injured in the fall of that elevator.

On June 9, 1960, Rowe instituted a suit against Rafiner (plaintiff here) and the owner of the building in the Circuit Court of Jackson County, Missouri, alleging in his petition therein that he had been injured by reason of the fall of a freight elevator in the building located at 524 Walnut Street, and further alleging that the elevator motor and gear were in a defective condition and that Rafiner knew of said condition, or could have discovered same by the "exercise of care," and failed to warn said Rowe of the dangerous condition.

Plaintiff forwarded the petition in that case to defendant and requested that it defend the suit under the terms of the policy hereinafter described. There was evidence to indicate that the casualty was caused by overloading the elevator which caused the teeth on a gear and pinion to be broken off, thus permitting the elevator to fall. On June 24, 1960, defendant notified plaintiff that it would not defend the Rowe suit because it involved "Products Coverage" which was not a risk covered by plaintiff's policy. Plaintiff Rafiner thereupon employed counsel, defended the suit, and obtained a verdict in its favor.

The insurance policy here involved (which was admittedly in force on the date of the casualty) contained a general insuring clause by which defendant agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident." It also provided that "with respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *."

From the foregoing it clearly appears that defendant was obligated to defend the suit heretofore mentioned unless there is found in the policy a provision containing an applicable condition or exclusion which would relieve defendant from the general obligation heretofore quoted. The sole exclusion relied on by defendant is that relating to "products hazard." One of the eight separate endorsements attached to the policy provides that "the policy does not apply to the products hazard as defined

therein." In that connection the policy contains the following:

"(c) Products Hazard. The term 'products hazard' means

(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured * * *.

(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railiroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

It is defendant's contention that it was relieved of the obligation to defend the Rowe case because the admitted facts show that the situation involved comes within the policy definition of "products hazard." An examination of that definition will disclose that subparagraph (1) relates to goods or products manufactured, sold or distributed. It accurately describes the usual subject matter which would normally be included in a definition of "products."

However, subparagraph (2) purports to include in the definition of "products" the word "operations." The word "operations" has a number of meanings, as indicated by the following definitions: "9 a: a business transaction esp. when speculative * * * b: the whole process of planning for and operating a business or other organized unit * * * c: a phase of a business or a business activity * * * 10: the operating of or putting and maintaining in action of something * * *." Webster's Third New International Dictionary. The singular "operation" is defined in Black's Law Dictionary, Fourth Ed., as: "Exertion of power; the process of operating or mode of action; an effect brought about in accordance with a definite plan; action; activity." The definition in (2), supra, would appear to include any activity relating to labor or the rendition of services even though no tangible goods are handled or produced. Although the meaning of subparagraph (2), supra, is not clear, it could be contended that if the "operations" occur away from the premises of the insured and have been completed, an accident occurring at the site of such operations would be a "products hazard" which would be excluded from coverage.

It is difficult indeed to understand how "products" could reasonably be defined to include operations consisting solely of work or services. The average person would consider "products" to mean goods or tangible items usually manufactured, sold, or distributed. No business man would reasonably expect to find a service operation excluded from coverage by including it in a definition of "products." To include an exclusionary provision such as (2), supra, under a definition of "products" in a general comprehensive liability policy would appear to be misleading and deceptive.

In the Kissel case, supra, the St. Louis Court of Appeals had before it a policy the material provisions of which were the same as those in the instant case. There the plaintiff was a contractor. Some time

after certain grading had been completed several adjoining landowners filed separate suits to recover damages to their land which they alleged had occurred as a result of the negligent manner in which the grading had been done. The insurer refused to defend because "products hazard" was excluded by an endorsement and it contended that, since the work had been completed, there was no coverage because of the "operations" clause which was identical with (2), supra. Kissel settled the cases and brought suit to recover the amount expended. The trial court found for plaintiff and the court of appeals affirmed that part of the judgment. In so holding, the court stated:

"By no stretch of legalistic nomenclature or business language or understanding can it be said that the plaintiffs either manufactured, sold, handled or distributed any products. Their business was clearly stated in the insurance policy as that of 'contracting.' From the very nature of their business one can only conclude that they performed services. To the average person the term products hazard can only mean a hazard arising out of the use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the insured. The suits filed against plaintiffs herein involve no such hazard but are based only and solely on alleged negligence in connection with the excavation of the premises in question. Certainly plaintiffs were seeking comprehensive general liability coverage and were seeking a policy that would cover all manner of claims arising in the performance of their type of business. * * * [A]s said in the Hercules case, any exclusion which relates to 'products' either sold, manufactured, handled or distributed by the insured would not be an exclusion which would relate to services performed out of which services the accident arose. We can do no better, in connection with the facts in the instant case, than to repeat what was said in the Hercules case: 'No businessman (or other ordinarily intelligent person) reading this policy could reason-

ably assume from the rather ambiguous language used therein that the insured was not protected against the natural consequence of any negligence on its part in the performance of its services which constituted its regular business. If there is any ambiguity in the policy it must be construed against the insurance company.' (Parentheses ours.) (171 F.Supp. l.c. 748.) We rule that the terms of the policy fully protected plaintiffs against liability for acts of negligence committed by them or by their subcontractor during the performance of the contract. * * * In the cases analyzed hereinbefore and relied on by this court it is stated that the exclusions and exceptions relied upon by the insurer to escape liability were not stated with clearness and precision, thereby defining the limits of its obligation therein. These courts found in an analysis of the exclusions and exceptions that they clearly demonstrate an ambiguity and vagueness which under well settled jurisprudence must be construed against the insurer. This is a cardinal rule of construction in connection with determining the coverage of an insurance policy and needs no further citation of authority." 380 S.W.2d l.c. 506, 507.

Cases cited in Kissel which support the conclusions therein are McAllister v. Century Indemnity Co. of Hartford, 24 N.J. Super. 289, 94 A.2d 345, Kendrick v. Mason, 234 La. 271, 99 So.2d 108, Hercules Company, Inc. v. Royal Indemnity Co., D.C., 171 F.Supp. 746, Neilson v. Travelers Indemnity Co., D.C., 174 F.Supp. 648 (opinion adopted by U.S. Court of Appeals, 8 Cir., 277 F.2d 455), Hoffman & Klemperer Co. v. Ocean Accident & Guarantee Corp., 292 F.2d 324 (7th Cir.1961), and McNally v. American States Ins. Co., 308 F.2d 438 (6th Cir.1962).

We approve the holding and reasoning in the Kissel case and rely upon it as authority supporting our conclusion herein. We do recognize, however, that there is one possible factual difference between Kissel and the case at bar. In Kissel the

court attached considerable significance to the fact that the plaintiff, a contractor, did not sell any products. In our case it is fair to assume that the plaintiff probably manufactured and installed some elevators, although undoubtedly a large portion of its business (as in this case) consisted of servicing existing elevators. In one sense of the word plaintiff did handle a product. However, an elevator is one large item which, when installed, became a part of the building. In that view of the situation plaintiff would be in the same category as contractors and subcontractors which, in Kissel, were held to be performing services and not handling "products" as that word is generally understood. In that connection, see Heyward v. American Casualty Co. of Reading, Pa., D.C., 129 F.Supp. 4, in which a products liability exclusion similar to the instant one was held not to preclude coverage for the insured, a plumbing and heating contractor, for accidents arising either before or after the housing project had been completed. We have concluded that the instant case and Kissel are sufficiently alike factually as to make Kissel applicable in determining the issue here.

Another provision in the policy tends to add to the difficulty in understanding it. Under "Exclusions," it is provided that "this policy does not apply: (a) to liability assumed by the insured under any contract or agreement except (1) a contract as defined herein * * *." "Contract" is defined in the policy as, "if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement." It therefore appears that some sort of liability relating to written contracts for elevator maintenance is covered by the policy. It is not apparent just what that coverage is and it may be, under the general insuring clause, that it would cover the type of negligence alleged in the Rowe suit. We need not determine that question but mention it simply to demonstrate the ambiguity of the policy as relates to the situation before us.

We hold that subparagraph (2), supra, when considered as a part of a definition of "products hazard"—when considered in connection with the "Contracts" provisions, supra—and when sought to be applied to the factual situation here involved, is misleading and ambiguous and therefore will be construed most favorably to the insured. When so construed we hold that it did not exclude coverage in this case and that defendant was obligated to defend Rafiner in the Rowe suit.

The judgment is reversed and the cause remanded with directions to enter a judgment for plaintiff.

All concur and STONE, Special J., concurs.