STOULIG, Judge.
Plaintiffs filed this suit to recover $2,428.26 in damages to the home of George Villere, caused by a leaky plumbing connection in a newly installed lavatory and vanity. Of this amount Villere claims $250. The balance of his claim was subrogated to his insurer when it paid $2,178.26 under the homeowner’s policy.
Named defendants were John Mook, the contractor, and his liability insurer, Aetna Life and Casualty Company. The defendant insurer denied coverage, claiming its policy excluded coverage for damage that occurred after the contractor completed the job and the damage complained of by plaintiff did not manifest itself until after Mook had finished the installation. In a separate answer, Mook also averred there was no leak when he finished the contract and he denied he had performed in a negligent manner. He then filed a third-party action against Aetna, alleging Aetna was liable under its policy for any amount he might be cast in judgment.
The trial court awarded Villere $250 and Travelers $2,178.26 against Mook and Aet-na. On the third-party action, Mook was awarded the full amount of the judgment for which he was liable against his insurer. Both defendants have appealed.
The contract from which this litigation arises was an agreement by Mook to remove an old lavatory and vanity from an upstairs bathroom in the Villere home and replace it with a new unit. Mook is a ceramic tile contractor who undertook the installation after he had installed shower doors and made minor tile repairs for plaintiff. He is not a licensed plumber. To connect the water supply to the new lavatory, he installed a small flexible pipe with a compression ring and a nut on each end. The leak that caused the damage came from a cracked nut on this pipe. When defendant *470 finished the water connection, it was late in the afternoon and he returned the following morning to complete the job by installing the drain connection. He testified he found no leak at that time and the water supply had been flowing through the pipe overnight.
The job was completed either on December 23 or 24, 1968. Meanwhile, Villere had left town on December 23 before Mook’s work was finished and the house was vacant. He returned home on December 28 or 29 after being advised by someone in his family that painters, engaged to paint the interior of the Villere home while he was away, found extensive water damage.
The leak was repaired by Melvin Munch, a licensed master plumber, who appeared as a witness for plaintiffs and was qualified as an expert plumber. He stated unequivocally the leak was caused by a cracked nut and that the nut had cracked because the man installing it had overtightened it with a wrench. Munch testified he had observed similar damage in the past caused by overtightening nuts.
Mook’s testimony was insufficient to rebut that given by the plumber. He conceded he was not aware that a nut could crack from overtightening and it is apparent that his experience in installing plumbing was incidental to his main business as a tile contractor.
On these facts, we concur with the trial court’s finding that Mook’s negligent performance was the proximate cause of the damage. Thus, we must determine whether this policy with Aetna insured him against plaintiffs’ claim.
The policy defense is based on the “exclusions” and “definitions” sections of what is called a “Manufacturers’ and Contractors’ Liability Policy.”
One of the exclusions enumerated under the “property damage liability coverage” section provides:

"This insurance does not apply:

* * * * * *
(m) to bodily injury or property damage included within the completed operation hazard * * * ”
Turning to the “definitions” section of the contract the completed operations hazard thus excluded reads:
" \C\ompleted operations hazard’ includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. ‘Operations’ include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.” (Emphasis supplied.)
Both litigants take the position the question of coverage turns on our interpreta-Lon of Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958), wherein the Supreme Court discussed at length a similarly worded exclusion in a suit against a negligent contractor and his insured. In that case, a contractor negligently served a *471 natural gas pipe in installing a sewerage system for the Town of Jena. As a result, natural gas collected in plaintiff’s home after entering through the pipes connecting the commode to the subterranean sewerage system and exploded. The insurer denied liability because its policy excluded coverage “ * * * if the incident occurs after such „ operations have been completed or abandoned at the place of occurrence thereof * * The Court rejected this defense and held the insurer liable.
Plaintiffs rely on this result because the language contained in the Kendrick exclusion bears a marked similarity to that relied on in the instant case. Defendant insurer argues Kendrick is distinguishable because the policy has since been revised to clarify what the Kendrick court termed confusing. We agree with the defendant. In Kendrick, the completed operation hazard was defined under a section of the policy relating to “product hazards.” While it was issued to cover both manufacturers and contractors, the Supreme Court concluded the completed operations exclusions referred only to manufacturers because it appeared in the “products hazard” section. The Court reasoned the reference to products necessarily limited the exclusion to manufacturers since contractors produced nothing. In reaching this result, the Court conceded the quoted verbiage could relate to a contractor’s performance but it discussed at length the ambiguities contained in the contract. As we read this opinion, the law applied by the Court is that an insurer who drafts an ambiguous exclusion cannot avail itself of that provision of its policy as a defense.
In the instant case, the policy has been revised so that the definition of “completed operations hazard” is not tied in with the “products hazard” definition. In this revision, the insurer has clarified its intent to discontinue coverage for damage caused by the contractor once the contractor has completed the job. In the policy at issue, it is clear Aetna’s liability is limited only to “property damage [which] occurs after such operations have been completed or abandoned” and by definition the operations were completed “(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed * *
While we agree the policy as revised covers damages to property inflicted by the contractor until the time he left the job site after performance was complete, this does not mean we conclude the insurer is not liable herein. In order to avoid liability, the insurer, who pleaded the policy defense had the obligation to establish the facts on which the defense rests, i. e., the damage did not occur until the contractor left the job site. As we review the evidence, the record is silent as to when the damage occurred and perhaps this fact is not susceptible of proof.
When the damage was discovered, the pipe had been leaking for an unknown time. The damaging element, flowing water, did not become apparent until the walls, flooring and carpeting downstairs had been saturated, but how long the flowing water was retained between floors before breaking through the walls and ceiling is unknown. Mook’s testimony was insufficient to establish the leak had not started before he completed the contract and left the job site. While he testified he saw ño leak or evidence of water damage as he installed the drain, he did not describe the extent of his inspection. Nor did he determine the pipe was not leaking when he left the job site. It is obvious he did not inspect the nut from which the leak developed as a potential trouble spot because he was unaware that nuts could crack from being overtightened. Thus we conclude the evidence is insufficient to establish when the damage occurred. In making this observation, we distinguish the time when the result of damage manifested itself, i. e., when the walls and floors reflected wetness, and the time when the damage occurred, i. e., the pipe sprung the leak.
*472 As we interpret the policy, the exclusion applies if the damage occurs after the contractor leaves the job site. While it is true the word “occurs” could also be construed to mean what we herein refer to as the damage manifesting itself, we apply the former interpretation of “occurs” mindful of the rule that exclusionary provisions in policies of insurance are to be construed strictly against the insurer. See Berry v. Aetna Casualty & Surety Company, 240 So.2d 243 (La.App.2d Cir. 1970).
Defendant Mook in his brief challenged the evidence adduced by plaintiffs to establish damages. Aetna conceded the amount claimed by plaintiffs was the damages due if it were determined the insurer was liable. In view of the fact that Mook obtained a judgment against Aetna in the third-party action, we need not discuss the arguments raised for and against this contention since Aetna, who concedes the amount, is ultimately liable for the entire judgment.
For the reasons assigned, the judgment appealed from is affirmed. Costs of this appeal are to be borne by appellant.
Affirmed.
REDMANN, J., concurs with written reasons.