STOULIG, Judge.
Plaintiffs filed this suit for damages they incurred when a fold-away attic stairway in the newly constructed Littleton home collapsed under the wife’s weight, causing her to fall 6 feet on her husband standing in the hallway below. Named defendants were the contractor who built the house, Roy L. Provenzano, and plaintiff’s vendor, B & R Construction Co., Inc.
This action is founded on tort. It is alleged the builder was negligent in defectively installing the stairway and the vendor was negligent in selling the house to plaintiffs with the knowledge of the defect in construction that ultimately caused the injuries to plaintiffs.
The defense of the contractor is essentially that he owed no duty to plaintiffs in that he was not the seller of the house and there was no privity of contract between himself and plaintiffs. It is his position that once the contract is completed, he is not liable to third parties injured due to alleged defective construction. In addition, he denied negligence and alternatively pleaded plaintiffs were barred from recovering because they were guilty of contributory negligence in improperly using the ladder.
From a judgment awarding $2,500 to Mrs. Littleton for pain and suffering; $200 to Mr. Littleton for pain and suffering; and $494.50 for medical expenses to *562 the community against the defendants in solido, both have appealed. We note at this point the vendor, B & R Construction Co., Inc., failed to timely file an appeal bond,[1] therefore, we dismiss its appeal ex proprio motu. Thus the defenses urged by the vendor cannot be considered.
The offending stairway is located in a home purchased by plaintiffs from B & R Construction Co., Inc., on June 18, 1968, Provenzano, the vendor’s president, individually contracted with the corporation to construct the home early in 1968. This agreement was entered into to meet requirements of the lending institution financing construction. After it was completed, the defendant corporation used the house for a short time as an office.
On November 1, 1968, Mrs. Littleton was standing on the second highest step of the stairway trying to light the hot water heater, located in the attic. The stairway collapsed and at that moment her husband walked from a bathroom into the hallway just in time to see his wife falling. He attempted to catch her and in so doing, he was pinned against the hallway wall by the falling stairway and his wife’s weight.
Mr. Littleton called Allen Bordelon, the foreman for the vendor, immediately after the incident and he arrived on the scene within an hour.' Bordelon reported seeing the broken ladder on the hallway floor. The stairway had pulled away from the ceiling joist to which it had been attached. He testified to seeing only sixpenny nails or casing nails around the joist to which the ladder had been anchored.
When not in use, the ladder, which is in three hinged sections, is concealed by a panel fitting flush against the ceiling. To use the ladder, it is necessary to pull a string that dangles from the panel downward, then unfold two sections of stairs which reach the floor when fully extended.
J. D. Meadows, who appeared as an expert carpenter on plaintiffs’ behalf, explained the safe method of installation is to nail the trim or casing of the ladder to the frame of the ceiling aperture cut to accommodate it, and to anchor the four corners thereafter with the stairway open. The weight nail he recommended was a twelve-penny common nail. He examined the Littleton stairway and stated it collapsed because it was not properly secured to the frame of the house. His first observation was that a sixpenny finishing nail was used whereas a heavier weight was required for safety, and the ladder was fastened only through the trim and not properly anchored.
In most essentials plaintiffs’ expert and Bordelon agreed as to what constituted a safe and proper installation. The omission in Bordelon’s testimony is the absence of evidence that the offending stairway was safely installed. He admitted seeing sixpenny nails and the inference is created by his statements that perhaps heavier weight nails were used. But, in view of the fact that he examined the ladder within an hour of its collapse, we think if it had been properly installed, he could have testified affirmatively to this effect.
In view of the foregoing, we conclude the stairway collapsed because it was improperly attached. Thus we must determine whether there is merit to the contractor’s contention: that his liability to third parties injured due to negligent construction ends once he completes the job.
It has been stated in several decisions that Louisiana courts adopt, as a general rule, the policy of terminating the liability of a contractor for injuries caused from defective construction once the job is completed.[2] The theory is based on the premise there is no privity of contract between the contractor and the injured third *563 party. However, numerous exceptions have been recognized and liability attaches if the contractor is guilty of gross negligence.
If we applied the holdings of the Kendrick case to the facts herein, we would have little difficulty finding the contractor liable on the theory of negligence in constructing an inherently dangerous instrumentality. However, we prefer to rest this decision on Marine Insurance Company v. Strecker, 234 La. 522, 100 So.2d 493 (1958). In that case an improperly installed cabinet fell and injured a tenant. The contractor was sued and the Supreme Court held the contractor was liable directly to the tenant. In so doing it rejected the theory there need be privity of contract between the injured party and the negligent builder. The decision states in part at page 494:
“Article 2315 of our Civil Code provides that every act whatever of man that causes damage to another obliges him by whose fault it happens to repair it. In the instant case plaintiff has alleged that Davis has suffered damage, and that the damage was caused by the fault of the contractor. If this allegation is accepted as true, under the plain provisions of this article there is an obligation on the contractor to repair the damage. The question then is whether he is relieved from this responsibility because there was no contractual relation between him and the injured person. We know of no provision of the Code which relieves one by whose fault another is damaged from the obligation to repair the damage because there is no privity of contract existing between them.”
Finally, appellant contends the awards for pain and suffering are excessive. As a result of the fall, Mr. Littleton suffered bruises and a cut hand. While the pain and inconvenience this produced was of short duration, we think a nominal award of $200 is justified under the circumstances.
As to Mrs. Littleton, an award of $2,500 for more severe injuries that produced shoulder and low back pain is proper. She consulted Dr. Gernon Brown approximately two months after the accident with complaints of shoulder pains and pain in the sacrum and coccygeal. He found, inter alia, a limitation of shoulder motion and prescribed therapy and exercise. Her shoulder motion was restricted for some time thereafter.
Dr. Brown stated Mrs. Littleton’s complaints of pain in July 1969 (some nine months after the accident) were difficult to relate to a specific injury. Nonetheless he expressed the view that she was suffering the pains she complained of and the fall would cause the injuries in question. We find no abuse of discretion in making this award.
For the reasons assigned, the judgment appealed from is affirmed, costs of'this appeal to be borne by appellant.
Affirmed.

. B & R filed a motion to appeal on May 14, 1971, and did not file the required appeal bond until November 12, 1971. Under LSA-C.C.P. art. 2087, it was filed 103 days late.

. Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958) ; King v. Mason, 95 So.2d 705 (La.App.2d Cir. 1957).