370 So.2d 503 (1979)
INSURANCE COMPANY OF NORTH AMERICA and
Gloria Latour, wife of/and Donald E. Lange
v.
SOLARI PARKING, INC. and U. S. Fidelity and Guaranty Company.
No. 63238.
Supreme Court of Louisiana.
April 9, 1979.
Rehearing Denied May 21, 1979.
*505 Andrew I. Brown, Henican, James & Cleveland, New Orleans, for Mr. and Mrs. Donald E. Lange.
Jack M. Alltmont, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for Solari Parking, Inc.
David E. Walle, Metairie, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for U. S. Fidelity and Guaranty Co.
DIXON, Justice.
This case involves the liability of a parking lot operator for the contents of an automobile which was stolen from the lot.
Gloria and Donald Lange, combining a honeymoon with a household move from Spokane, Washington to Key West, Florida, arrived in New Orleans on March 16, 1975 at approximately 9:00 p. m. Afraid to park the car on the street because it was loaded with their personal effects, the Langes drove around the French Quarter for a few minutes until they spotted the Solari Parking Garagean inside, attended parking facility. After pulling into the garage's driveway, the Langes surrendered the keys of their 1972 Riviera to the attendant, Mr. White, and received a claim check from him. After two or three minutes of conversation, White gave the Langes directions to Pete Fountain's night club. No mention was made of the car's contents. Two hanging clothes bags, a picnic basket, two automobile tires (snow tires, to be discarded in Florida, were on the vehicle), a pillow, an afghan, a black pouch and a cosmetic bag were in the back seat area; on the front seat was a carpet bag; suitcases were in the locked trunk of the car.
After the Langes left, White got into the car and started to park it, but then left the car with the engine running when he was called away to attend to another customer. During this short interval, the automobile and all its contents were stolen. When the Langes returned several hours later, White related the occurrence to them and helped them fill out a claim of damage form, on which they listed the car and all its contents.
Although the Langes were paid for the loss of their automobile, Solari denied any responsibility for the items contained in the Riviera. Mr. and Mrs. Lange were partially compensated by their own insurer, Insurance Company of North America, which thereafter instituted suit as their subrogee against Solari and its insurer, United States Fidelity and Guaranty Company. The suit demanded $6185.00, which included $5185.00 paid for the loss of two pieces of jewelry and $1000.00 for the loss of unscheduled personal property. Mr. and Mrs. Lange intervened, claiming an additional $5609.03 as the undepreciated value of the other items left in the car. Solari brought a third party action against United States Fidelity and Guaranty Company when the latter denied policy coverage for the loss of the car's contents.
After a trial on the merits, the district court held in favor of Insurance Company of North America and the Langes and against Solari and its insurer. The court also ruled in favor of Solari in the third party demand. On appeal, however, the Fourth Circuit reversed and rendered judgment in favor of the defendants. Insurance Company of North America thereafter abandoned its claim and only the intervenors sought review to this court, which was granted on November 3, 1978.
In reaching its decision, the Court of Appeal reasoned that the liability of the depositary was based on his consent to receive, preserve and restore the property to another. C.C. 2926. The court then reviewed the jurisprudence and determined that recovery for the contents of an automobile had been awarded in cases where the owner or attendant had specifically discussed the contents with the driver. United States Fidelity & Guaranty Co. v. Dixie Parking Service, Inc., 262 La. 45, 262 So.2d 365 (1972);[1] *506 United States Fidelity & Guaranty Co. v. Allright Shreveport, Inc., 256 So.2d 479 (La.App.1972). On the other hand, the court noted cases in which recovery had been denied in the absence of the depositary's express consent to accept the items. The Travelers Insurance Co. v. General Auto Service, Inc., 220 So.2d 738 (La.App.1969); Lee v. New Orleans Roosevelt Corp., 106 So.2d 855 (Orl.La.App.1958).[2] The court then reasoned that the record failed to demonstrate either actual or constructive knowledge on the attendant's part from which consent to accept the car's contents could be presumed, and therefore concluded that the defendants were not responsible for the loss.
The essence of the appeal court's rationale is that the depositary cannot consent to receive, protect, and restore items unknown to him.[3] However, whether there was a contract of deposit of the contents of the car is not essential to a determination of the issue before us. The Langes entered into a contract of deposit of the car with Solari, which Solari admits was breached when White carelessly allowed the Langes' automobile to be stolen. The applicable measure of damages is provided by Article 1934 of the Civil Code, which provides in part:
"Where the object of the contract is any thing but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications:
1. When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.
2. When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract; but even when there is fraud, the damages can not exceed this."
A review of the record is convincing that the items contained in the Langes' car are included in the damages which the parties contemplated, or which "may be supposed to have entered into [their] contemplation."[4] The Langes expected the attendant to take control of their possessions when they gave him the key to their car. Solari agreed to accept the Langes' Riviera and expressed no reservations concerning its contents. It would be unreasonable to presume that Solari was unaware that many people frequently leave their personal items in their cars. In the instant case, the Langes' entire back seat was filled with their possessions to make room for more items to be stored in the trunk. Although *507 Solari has maintained its ignorance of the automobile's contents, it must admit that automobiles containing a substantial number of items are common, especially in the French Quarter because of the large number of tourists.
Car thieves rarely unload vehicles before stealing them. Solari's management is obviously aware that the contents of some vehicles will be stolen if its employees afford opportunities to car thieves. Conversely, if Solari's attendant had taken proper security measures to protect the car, the contents would not have been stolen.[5] In light of these considerations, we conclude that the loss of the automobile's contents was a part of the damages contemplated by the parties to the breached contract.[6]
Although a depositary may not contract away his liability, which is the essential element of the contract of deposit, he can protect himself by specifying with the depositor the nature of the deposit and the extent of his responsibility for the deposited items. See Davila v. International Parking Co., 91 P.R.R. 197 (1964); Ellish v. Airport Parking Co. of America, 42 A.D.2d 174, 345 N.Y.S.2d 650, 655 (1973) (Shapiro, J. dissenting). In the instant case, Solari could have instructed White to inform all its customers that the parking facility was a depositary only for vehicles and that it would not accept responsibility for any items contained in their cars. Having failed to take this simple measure, Solari must accept the consequential liability for the contents of the Langes' automobile.
The district court also held that Solari was to be indemnified by its insurer, United States Fidelity and Guaranty Company. In brief, the insurer argues that its policy coverage does not encompass the contents of the automobile parked at Solari's facility. The relevant language of the policy provides:
"III GARAGEKEEPERS' LEGAL LIABILITY
COVERAGE K-1FIRE AND EXPLOSION
COVERAGE K-2THEFT of the entire automobile
COVERAGE K-3RIOT, CIVIL COMMOTION, MALICIOUS MISCHIEF AND VANDALISM
COVERAGE K-4COLLISION OR UPSET
The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:
K-1. loss to an automobile caused by fire or explosion other than explosion of tires;
K-2. loss to an automobile caused by theft of the entire automobile."
The insurer contends that the phrase "loss to an automobile" includes only the automobile and its equipment, such as tires and jacks, and not personal effects, such as those lost by the Langes. However, the policy language suggests coverage more general than merely for the automobile and its equipment. Narrow coverage, such as the insurer argues was intended by the policy, should be clearly and expressly stated, and should not give rise to several possible interpretations, as does the language in question.
It is settled jurisprudence that policy language is to be read broadly in favor of coverage, Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958); Craft v. Trahan, 351 So.2d 277 (La.App.1977), and that ambiguities are to be construed against the insurer. Kendrick v. Mason, supra; Ory v. Louisiana and Southern Life Insurance Co., *508 352 So.2d 308 (La.App.1977). In light of these principles, we reinstate the trial judge's interpretation of the policy provisions.
Both Solari and United States Fidelity and Guaranty Company contend that $1000.00 of the $5519.88 awarded to the Langes for the depreciated value of their personal property constituted a double recovery. The defendants argue that the Langes already have received $1000.00 from their insurer for the loss of personal property. However, we believe that the district judge was correct to award the entire $5519.88 to the intervenors since the money paid to them by their insurer was provided under a collateral contractual arrangement which has no effect on the liability of Solari or its insurer. See Corley v. West, 346 So.2d 1272 (La.App.1977), writ denied, 350 So.2d 673 (La.1977); Riley v. Frantz, 253 So.2d 237 (La.App.1971).
For the reasons assigned, the judgment of the Court of Appeal is reversed and the judgment of the district court in favor of Gloria L. and Donald E. Lange and against Solari Parking, Inc. and United States Fidelity and Guaranty Company is reinstated; on the third party demand, the decision of the district court in favor of Solari Parking, Inc. and against its insurer is reinstated; defendants are cast for costs.
SUMMERS, C. J., and BLANCHE, J., dissent.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
A deposit, in general, is an act by which a person receives the property of another, binding himself to preserve it and return it in kind. La.Civil Code art. 2926. The deposit is perfected only by the delivery, real or fictitious, of the thing deposited. Id. art. 2930. The voluntary deposit takes place by the mutual consent of the person making the deposit and the person receiving it. Id. art. 2932.
In the instant case, the thing deposited with Solari was the Langes' automobile. There is no proof in the record of express consent by Solari to accept any other items contained in the automobile (as noted by the court of appeal, the items of substantial value were located in the vehicle's trunk). Moreover, assuming arguendo, that the responsibility of a depositary may be enlarged by its "constructive knowledge" of an automobile's contents, the court of appeal was correct in its factual determination that such constructive knowledge was not established by the plaintiffs herein. I, therefore, cannot accept the majority's conclusion that the items contained in the Langes' automobile are included in the damages which the parties contemplated, or which "may be supposed to have entered into [their] contemplation." La.Civil Code art. 1934(1). The clear effect of such a holding is to make depositaries insurers for the loss or damage of items not contemplated by the original contract of deposit.
Accordingly, I respectfully dissent.
NOTES
[1] This interpretation of United States Fidelity & Guaranty Co. v. Dixie Parking Service, Inc., supra, is apparently based on one sentence: "Here the deposit of the automobile and its contents was complete when it was shown that the parking lot attendant had knowledge of the contents of the car and had `not refused to receive it.'" 262 La. at 51, 262 So.2d at 367. However, the case did not hold that the attendant's knowledge of the contents of the car was a prerequisite to his receiving them in deposit along with the automobile. See also, Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973).
[2] In Mintz v. Audubon Insurance Co., 140 So.2d 809 (La.App.1962) and General Accident Fire and Life Assurance Co., Ltd. v. J.F.D.L., Inc., 148 So.2d 857 (La.App.1963), the Fourth Circuit suggested that recovery was available for such items as one would ordinarily expect to be left in an automobile. See also, 14 McGill L.J. 101 (1968); 13 McGill L.J. 178 (1967). However, this rationale was repudiated by the same court in a rehearing per curiam in The Travelers Insurance Co. v. General Auto Service, Inc., supra.
[3] But see C.C. 2943: "The depositary should not seek to know what are the things confided to him, if they are shut up in a box, or in a sealed cover."
[4] In brief the intervenors characterized the attendant's actions as gross fault which they argue is tantamount to fraud, C.C. 3556(13), and therefore suggest that damages be assessed under C.C. 1934(2). However, we need not consider this contention since we find that the parties contemplated the damages in question.
[5] Different considerations might come into play if the automobile is not stolen, but only items of property from the automobile. Security measures intended to protect vehicles from theft might not be intended to protect their contents.
[6] In Zesiger v. Dean, 247 So.2d 222 (La.App.1971), the depositary allowed the automobile entrusted to him to be impounded by the police for illegal parking. This caused the owner to appear twice in traffic court and to lose a day's pay, approximately $15.00, for each appearance. Taking a common sense approach to determining what damages were contemplated by the parties, the court awarded the plaintiff $32.00 for the lost earnings.