HALL, Judge.
Plaintiffs appeal from a summary judgment dismissing their suit as to Maryland Casualty Company, insurer of D. G. Products Company, (another defendant,) on the ground that Maryland’s policy does not insure the liability asserted against its insured. There is no genuine issue as to any material fact concerning the coverage under Maryland’s policy.
Plaintiffs allege that their son, Richmond Tillery, Jr., was electrocuted at or about 7:30 A.M. July 13, 1964, while working in the rear yard of Pelican Ice and Cold Storage, Inc. located at 408 Howard Avenue in the City of New Orleans. The deceased was employed as a truck driver by Neugess Ice Service which was engaged in the business of buying and selling ice manufactured by Pelican Ice and Cold Storage, Inc. Deceased’s employment required that he use a certain International Ice Van truck which had a built-in refrigeration unit mounted over the driver’s cabin, and as part of his duties he was required to park the truck over-night in the rear yard of Pelican’s premises and plug the refrigeration unit of the truck into a certain 440 volt electric line so that the freezing tempera *66 ture of the truck would be maintained while it was not in use. Plaintiffs’ petition alleges that in the late evening of July 12, 1964 the deceased parked the truck in the yard and plugged the refrigeration unit into the electric line as usual; but heavy rains fell throughout the night saturating the interior of the open refrigeration unit and its wiring; and as a consequence the entire truck body, which was of metal, became charged with electricity. The following morning when deceased attempted to climb into the driver’s cab he was electrocuted.
Plaintiffs filed suit for damages for wrongful death against Pelican Ice and Cold Storage, Inc., and its insurer, Home Indemnity Company; D. G. Products Company and/or J. W. Witt, proprietor thereof, and their insurer, Maryland Casualty Company. They also included as defendants Woods-Clay Distributors, Inc. and Mossy Enterprises, Inc., charging certain acts of negligence and breaches of warranty as to each of the defendants.
The only acts of negligence and breaches of warranty alleged by plaintiffs to have been committed by D. G. Products Company, Maryland Casualty Company’s insured, are set forth in paragraph VIII of the petition which we quote in full as follows:
“VIII
Petitioners allege on information and belief, that, D. G. Products Company, a foreign corporation created and existing under the laws of the State of Tennessee, with principal offices located at P. O. Box 576, Shelbyville, Tennessee, and/or J. W. Witt, owner and/or proprietor, doing business under the trade name ‘D. G. Products Company, P. O. Box 74, Shelbyville, Tennessee,’ (both herein sometimes referred to as the ‘Producer’) is engaged in the business of producing mobile refrigeration; that said producer has manufactured, designed, confected, constructed and/or assembled the certain refrigeration-van-body and the certain electric refrigeration unit of the 1964 International truck herein described, including the electrical system and wiring thereof; that the same was improperly designed and negligently placed on the public market by said producer containing the dangerous latent electrical vices and defects herein set forth; that, said producer, and its sales distributor sold and delivered said refrigeration equipment, representing and warranting same to all persons property (sic) in contact therewith, to be sound, safe and fit for the purposes and used (sic) herein described; in breach whereof, said producer is herein called in damages and in warranty in the premises; and, which producer is covered by a contract of liability insurance with Maryland Casualty Company, applicable to the acts of negligence and warranties herein set forth.”
Plaintiffs further allege that the International Ice Van truck involved herein was sold and delivered “new” in March of 1964 by Woods-Clay Distributors, Inc. of Hattiesburg, Mississippi to Mossy Enterprises, Inc. of New Orleans who contemporaneously leased it to, and for, the exclusive use of Pelican Ice and Cold Storage, Inc.
Thus we sec that D. G. Products Company of Shelbyville, Tennessee “ * * * is engaged in the business of producing mobile refrigeration * * * ” and “manufactured, designed, confected, constructed and/or assembled the certain refrigeration-van-body and the certain electric refrigeration unit of the 1964 International truck” herein involved; that such truck was sold and delivered “new” by one of its distributors to Mossy Enterprises Inc. of New Orleans in March of 1964 who contemporaneously leased it to Pelican Ice and Cold Storage, Inc. and that the accident happened in Pelican’s yard in New Orleans on July 13, 1964.
*67 Maryland Casualty Company is the only defendant involved in this appeal. The case is still pending in the Trial Court against all other defendants including D. G. Products Company, Maryland’s insured. The sole question presented is whether Maryland’s policy affords protection against the liability alleged against its insured.
The policy involved was a “Manufacturer’s and Contractors’ Liability Policy” issued by Maryland to D. G. Products Company, 511 Madison St., Shelbyville, Tennessee.” The insuring agreement (as to bodily injury liability) reads as follows:
“1. Coverage A. Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom sustained by any person, caused by accident and arising out of the hazards hereinafter defined.” (emphasis supplied)
The only hazard insured against as shown on the face of the policy is “1. Premises-Operations. Electrical apparatus Mfg. N.O.C. including fixtures or appliances.” All other hazards such as “Elevators,” “Products-Completed Operations” etc. appearing in the printed list on the face of the policy are marked “Not Covered.”
“Premises-Operations” is defined in the policy as “The ownership, maintenance or use of premises, and all operations.” Expressly excluded from coverage under the “Premises-Operations” hazard is
“ * * * the ownership, maintenance, operation, use, loading or unloading of * * * (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining * *
The term “automobile” is defined in the policy as “ * * * a land motor vehicle, trailer or semitrailer * *
Also expressly excluded from coverage under the “Premises-Operations” hazard is the “Products-Completed Operations” hazard which is defined in the policy as .follows:
“Division 4 — Products-Completed Operations: (1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of Item 3 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;
“(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be ‘operations’ within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division 1 of Item 3 of the declaration specifically includes completed operations.”
*68 Maryland Casualty Company takes the position that since the only hazard insured against by the policy in question is “Premises-Operations,” and since the accident occurred in New Orleans away from the insured’s premises in Tennessee, or the ways immediately adjoining, as a consequence of the use, maintenance or operation of an automobile, a risk expressly excluded from any coverage for “Premises-Operations,” there is no coverage under the policy for the kind of liability alleged by plaintiffs against its insured. Maryland also takes the position that since the refrigeration-van-body and the electric refrigeration unit was alleged by plaintiffs to have been “manufactured, designed, confected, constructed and/or assembled” by D. G. Products Company, sold by it to another, and involved in an accident away from premises owned, rented or controlled by D. G. Products Company, the insurance risk involved in the accident falls precisely under the hazard designated by the policy as “Products-Completed Operations,” which was “Not Covered” by the policy, and which risk was expressly excluded from the coverage of the “Premises-Operations” hazard.
On the other hand plaintiffs contend that operations on the premises of D. G. Products Company are covered in the “Premises-Operations” hazard, and that they have charged negligent operations on such premises during the manufacture of the unit before its completion and delivery, which negligent operations, consisting of faulty design and assembly of the unit, caused injury after delivery of the defectively manufactured product. Plaintiffs cite the following cases in support of their contention: Kendrick v. Mason, 234 La. 271, 99 So.2d 108; King v. Mason, 234 La. 299, 99 So.2d 117; Swillie v. General Motors Corporation, La.App., 133 So.2d 813; Poynter v. Fidelity and Casualty Company of New York, La.App., 140 So.2d 42; and Thibodeaux v. Parks Equipment Company, La.App., 140 So.2d 215.
We are of the opinion that while the alleged improper design and assembly of the unit was an operation on the premises of the insured, it does not follow that the accident in question was a risk insured under the policy. The accident in question occurred away from the premises of the insured and was allegedly caused by reason of a product manufactured by the insured which had been sold by it and possession thereof delivered to another. The risk of such an accident is precisely what was excluded from coverage by the terms of the policy.
The first four of the five cases cited by plaintiffs are clearly distinguishable on the facts from the instant case. In each of these four cases the Courts found a distinction between the manufacture, sale, handling or distribution of a product and the sale of a service. The Courts held that since the insurance policies (similar or identical to the one involved here) did not plainly include the sale of a service within the definition of “Products-Completed Operations” the exclusion of that particular hazard did not render the insurance inapplicable to liability arising from the sale of a service.
Both Kendrick v. Mason and King v. Mason involved the same facts and the same question, i. e., whether the negligent installation of a sewer line by the insured contractor, Mason, was covered under a policy which excluded the “Products-Completed Operations” hazard. The Court held there was coverage saying:
“We are constrained to conclude that the liability exclusion provisions of the policy herein issued by the defendant to Mason are inapplicable herein for the reason that Mason handled no products but was engaged solely as a contractor and the exclusion provisions of the policy have no application to the construction work performed by him * * *>> Kendrick v. Mason, supra, 99 So.2d p. 116.
In Swillie v. General Motors Corporation the Court held that the actual negligence was not in the manufacture, handling or sale of a finished product, but in its *69 negligent installation after it had been manufactured and sold. In that case the insured was a manufacturer as in the instant case. The insured sold a patented device manufactured by it. After the sale had been consummated the purchaser entered into a contract with the insured whereby the latter undertook to install the device on a truck and was paid an additional $100.00 for the installation. The Court held that the installation was not clearly included in the definition of “Products-Completed Operations” so the exclusion of that hazard did not exclude coverage for the negligent service performed by the insured. The Court said:
“ * * * Under these facts, it is our opinion that the manufacture of the double loadster was a separate and distinct operation from the installation of the double loadster and brake lines and the evidence is clear that it was during the installation that the defective flare was placed on this truck by employees of Natchez Steel Products Company, Inc.”
The Court further said:
“ * * * it appears clear that when Natchez Steel Products Company, Inc. installed the defective brake line it was not handling or selling a product, but was simply performing work, that is, selling services for which it charged $100.00 * * *.”
In holding in line with the Kendrick case that the exclusion of the “Products-Completed Operations” hazard had no effect on the coverage of the sale of services the Court said:
“ * * ^ as we understand the Kendrick case, it is clear authority for the proposition that both part (1) and part (2) of the products hazard definition apply only to an insured who is handling products and has no application whatever to an insured who is only performing work, that is, simply selling services.”
Again in Poynter v. Fidelity and Casualty Company of New York the Court applied the Kendrick interpretation of this type of policy and held that the service and repair of a heating unit was not included in “Products-Completed Operations” and therefore was not excluded from coverage when that type of coverage was excluded.
From the care taken by the Courts in the Kendrick, Swillie and Poynter cases to distinguish between the manufacture, handling or sale of a product and the sale or performance of a service it is fair to infer that there would have been no coverage if there had been involved therein the manufacture, sale or handling of a product rather than the performance of a service.
The last case cited by plaintiffs (Thibo-deaux v. Parks Equipment Company) is similar to the instant case in that it involved a product manufactured and sold by the insured. The accident allegedly occurred as the result of the failure of a valve manufactured by the insured while same was being used by a purchaser away from the premises of the manufacturer. Plaintiff alleged that the manufacturer was negligent in the manufacture, inspection and design of the valve and in representing to the contractor that it could be used as a component part of the machine which the contractor had constructed and was testing. The policy issued to the insured excluded the “Products-Completed Operations” hazard. The First Circuit Court of Appeal (Judge Ellis, dissenting) held that there was coverage under the policy in spite of the exclusion. The Court stated that in order to exclude coverage under the policy it would have to decide that the language of the exclusion cleaidy and unambiguously excluded coverage of all claims arising directly or indirectly out of goods or products manufactured and sold by the insured and that it was unable to so hold. The Court found that *70 in the general insuring agreements the insurer agreed:
“To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.”
Because of what it called the “broad coverage” of this insuring agreement the Court concluded there was some ambiguity as to whether the exclusion of the “Products-Completed Operations” hazard eliminated coverage for liability arising with respect to misrepresentations concerning the product. Construing this ambiguity against the insurer the Court said the insurance applied to such misrepresentations. We note that the Court did not hold that the insurance covered negligence in the manufacture, inspection or design of the valve, which is what we are concerned with here.
In the insuring agreement of the policy in question here the “broad coverage” found by the Court in the Thibodeaux case to exist in the insuring agreement of the policy before them has been eliminated by a change in the insuring agreement so that it applies only to those accidents arising out of the hazards specifically defined in the policy. There is no longer any “broad coverage” for any type of liability which is not in terms plainly excluded by the policy, but coverage exists only for those hazards expressly defined. In the instant case the only hazard insured is “Division 1. Premises-Operations” which covers only accidents on the premises of the insured arising out of the insured’s operations thereon. The hazard for which plaintiffs seek to invoke coverage here is expressly defined in “Division 4. Products-Completed Operations” which is not only “Not Covered” on the face of the policy but is expressly excluded from coverage under “Division 1. Premises-Operations,” the only risk against which the insured sought protection and for which it paid a premium.
Being of the opinion, for the foregoing reasons, that the policy issued by Maryland Casualty Company does not insure the liability herein asserted against its insured, D. G. Products Company, the judgment appealed from is affirmed, plaintiffs-appellants to bear the costs of this appeal.
Affirmed.