198 So.2d 757 (1966)
AMERICAN INSURANCE COMPANY
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY et al.
No. 6692.
Court of Appeal of Louisiana, First Circuit.
November 15, 1966.
Writ Refused February 3, 1967.
On Rehearing April 17, 1967.
Further Rehearing Denied May 29, 1967.
*758 Louis G. Baine, Jr., of Seale, Hayes, Smith & Baine, Baton Rouge, for appellant.
Carlos G. Spaht, of Kantrow, Spaht, Weaver & Walter, Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, R. Gordon Kean, Jr., of Sanders, Miller, Downing & Kean, Baton Rouge, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
REID, Judge.
This action for damages was instituted by American Insurance Company, collision *759 insurer and subrogee of Capital City Erectors, Inc., against Baton Rouge Equipment Company, Inc. and its insurer Hartford Accident and Indemnity Company, and against Champion Carriers, Inc. Plaintiff seeks to recover from the defendants the sum of $11,649.20 alleged to be the reasonable and actual expenses and costs of repairing damages to a Champion hydrocrane unit, less the $100.00 deductible under its policy of insurance, which damages allegedly occurred on August 5, 1960, when the left front axle and axle housing on said unit gave way or broke, causing the said unit to go out of control and overturn on the shoulder of Louisiana Highway 67 above Baton Rouge. Plaintiff alleged that its insured, Capital City Erectors, Inc., purchased said equipment from Baton Rouge Equipment Company, Inc. which in turn had acquired the equipment from Champion Carriers, Inc., manufacturer. Plaintiff amended its petition to add as a party defendant the Bucyrus-Erie Company as a co-manufacturer with Champion Carriers, Inc., but later dismissed its suit as to the said Bucyrus-Erie Company. Plaintiff again amended its petition to add as a party defendant the Liberty Mutual Insurance Company, liability insurer of Champion Carriers, Inc.
Liberty Mutual Insurance Company filed a peremptory exception of no cause of action, alleging no coverage under its policy of insurance with Champion Carriers, Inc., which exception, for oral reasons assigned, was overruled on the basis of the decision of this Court in Thibodeaux v. Parks Equipment Company et al., 140 So.2d 215.
Each of the defendants filed an answer of general denial and Champion Carriers, Inc. alleged contributory negligence on the part of plaintiff's insured, Capital City Erectors, Inc. which it contended was imputable to the plaintiff.
Champion Carriers, Inc. filed a peremptory exception of the prescription of one year which, for written reasons assigned, was overruled. Champion Carriers, Inc. renewed is peremptory exception of prescription of one year based on the contention that plaintiff's petition stated only a cause of action for redhibition and that plaintiff's subrogor had knowledge of the redhibitory defect more than one year prior to the date on which suit was filed. The Court this time maintained the exception and dismissed plaintiff's suit as to Champion Carriers, Inc. Liberty Mutual Insurance Company, insurer of Champion Carriers, Inc., also filed an exception of prescription of one year which the Court also sustained and dismissed plaintiff's suit as to it. Plaintiff applied for a new trial or rehearing on said judgments but later voluntarily dismissed said application.
Peremptory exceptions of prescription of one year were filed by Baton Rouge Equipment Company and its insurer Hartford Accident and Indemnity Company which were referred to the merits, "for the reason that both demands by Capital City Erectors alleged negligence in the repair of this equipment, and the court felt obliged to hear evidence before passing on those pleas of prescription as to that part of the demands".
Plaintiff filed a third amended petition to increase its claim by $274.80.
For oral reasons assigned June 2, 1965, judgment was rendered in this matter on June 7, 1965, in favor of the Hartford Accident and Indemnity Company and the Baton Rouge Equipment Company, rejecting plaintiff's demands at its costs.
Plaintiff urges on this appeal that the Trial Court erred in maintaining the exception of prescription in that (1) prescription applicable to the instant case is the prescription of ten years for breach of contract and not the prescription of one year, and (2) that even if the prescription of one year is applicable in this matter, that date from which it commenced to run was the date that the damage manifested itself on August 5, 1960, and not some prior date.
*760 The Defendant-Appellee Liberty Mutual Insurance Company filed an answer to the appeal of the plaintiff, in which said answer it alleged that its peremptory exception based upon the failure of plaintiff's petition to state a cause of action against it should have been sustained on the grounds that appellee Liberty Mutual Insurance Company had no coverage applicable to the plaintiff's case. It therefore prayed that the Trial Court's ruling on its peremptory exception of no cause of action be reversed. It is upon this issue that the appeal was taken.
As set forth in the facts above, the Trial Court first passed upon the plea of prescription of Champion Carrier and Liberty Mutual Insurance Company and held that insofar as they were concerned the demands against them were in the opinion of the Court demands in redhibition, despite the fact that plaintiff's petition had not so designated them and despite the fact that plaintiff did not ask for all of the relief afforded him by the laws of our state in redhibitory actions. The Trial Court further went on to state that in considering this exception it had the deposition of C. W. Briggs, Jr., the chief owner and manager of Capital City Erectors, and based upon his testimony the Court held that Mr. Briggs had notice of the defects forming the basis for the suit as to Champion Carriers and its insurer for well over one year prior to the filing of the suit and for that reason sustained the plea of prescription.
After hearing the evidence the Court concluded that the same rule which it applied to the defendant Champion Carriers and its insurer Liberty Mutual also applied to the other defendants, the Baton Rouge Equipment Company and its insurer Hartford Accident and Indemnity Company. The Court then went on to say:
"The Court could comment at length on the reasons for that conclusion but it may be stated briefly that at the time of a failure of this equipment in April 1960 Mr. Briggs had the equipment weighed on two different occasions, one at the state weighing scales in West Baton Rouge Parish and again by Mike Safer's scales at his place of business. He then knew that the weight on the front axle of this equipment was approximately 14,000 pounds; he knew, he had all the necessary information to know, that the axle furnished with this equipment could not bear that much weight; if he remembered the specifications, he remembered that this machine was designed to bear a weight of 11,000 pounds on the front axle. The redhibitory vice in the machine, as I view the evidence in this case, was that, and that alone. It is not a question now of whose responsibility it was in putting in an insufficient front axle. It is beyond dispute, I think, that all the trouble with this machine arose because the front axle was insufficient.
"Sometime in April of 1960 Mr. Briggs and officials of Baton Rouge Equipment Company negotiated with a view of installing a heavier axle in the machine. Those negotiations amounted to nothing because Mr. Briggs was called upon to pay upward of $2,000 for the installation of the heavier axle.
"While it may not be entirely proper to say this, I am of the opinion that if I had been faced with a suit filed by Mr. Briggs against the sellers of this equipment within a year following April 27, 1960 I would have given him judgment for an amount sufficient to install this heavier axle, that is, a judgment in the sum of $2,180, because, from the evidence introduced in this case I think he would have been clearly entitled to it. He did not do that. That was his responsibility, and no suit was filed in connection with that defect for well over one year thereafter.
"Counsel for the plaintiff in the second numbered suit and for the plaintiff in reconvention in the first numbered suit *761 have laid great stress on their charges of negligence on the part of Baton Rouge Equipment Company in connection with repairs to this machinery, and have cited numerous authorities for the proposition that such a claim is in contract and the prescription applicable is that of ten years. I might say, as counsel for the defendants stated, there is not a scintilla of evidence in this case that there was ever any negligence in any of the repairs made by Baton Rouge Equipment Company to this machinery. In my opinion it is beyond dispute that all of these accidents resulted from one fact and one fact alone, that the front axle of this machine was insufficient for the weight that it was called on to bear."
This Court is in agreement with the opinion of the Trial Court in regard to the plea of prescription. This Court is also in agreement with the Court's finding of fact that there is no evidence in the record which would indicate any negligence resulting from any of the repairs made by the Baton Rouge Equipment Company to the machinery. The record is clear that the Trial Judge's statement "that the front axle of this machine was insufficient for the weight that it was called on to bear" is eminently correct.
An examination of plaintiff's petition clearly shows that its demand is one of redhibition.

"3.
On information and belief, defendant manufacturer, Champion Carriers, Inc. warranted to Capital City Erectors, Inc., as purchaser, that the said unit was free from all defects by reason having been improperly constructed, either through fault in assembling, through design, or through use of defective or improper parts, said warranty being in written warranty form and being delivered to petitioner's insured at the time of the purchase of said unit.

"4.
Defendant, Baton Rouge Equipment Company, Inc., as vendor of said Champion hydrocrane unit, was also a warrantor to Capital City Erectors, Inc., as vendee, by having legally and conventionally warranted to petitioner's insured's, Capital City Erectors, Inc., that the said Champion hydrocrane unit was fit for the purpose for which it was intended.

"5.
Subsequent to the purchase of the said unit, and prior to August 5, 1960, the said Champion hydrocrane unit became disabled on two separate occasions by virtue of the axle and axle housing on said unit breaking, or in some manner becoming inoperative, because of the said axle and axle housing having been defective from manufacture, design, or not having been of sufficient strength to perform the job which it was intended to perform, all of which was or should have been known and could have been discovered by defendant manufacturer, Champion Carriers, Inc. and defendant vendor, Baton Rouge Equipment Company, Inc. by a reasonable and proper inspection of said axle and axle housing"
Plaintiff's allegation of negligence on the part of Champion Carriers, Inc. is shown by paragraph 11 which reads thus:
"Petitioner now shows that defendant manufacturer, Champion Carriers, Inc., is liable, jointly and in solido with the other defendants herein, for the damages occurring to said Champion hydrocrane unit by reason of breach of its warranty on said unit in that said unit was not free from defect in design or manufacture, at sale or after repaired, and was not fit for the purposes for which it was intended to be used, all of which the defendant manufacturer knew or should have known by making a reasonable and proper inspection."
*762 Plaintiff's allegation of negligence on the part of Baton Rouge Equipment Company, Inc. is shown by paragraph 12 of its petition which reads thus:
"Petitioner alleges that the defendant vendor, Baton Rouge Equipment Company, Inc., is also liable, jointly and in solido with the other defendants herein, for the damages occurring as a result of the accident herein, by reason of breach of its warranty imposed by law in Louisiana to its vendee, petitioner's insured, Capital City Erector, Inc., in that the said Champion hydrocrane unit was not fit for the purpose for which it was intended to be used, either at sale or after repaired, all of which the defendant, Baton Rouge Equipment Company, Inc., knew or should have known by making a reasonable and proper inspection."
There is no question but what plaintiff's petition, except for its allegation of negligence in connection with the repairs made by the Baton Rouge Equipment Company, is a suit for breach of warranty or an action in redhibition.
The facts surrounding plaintiff's insured acquiring the vehicle and the relation of the parties are as follows:
On or about March 16, 1959, Champion Carriers, Inc. sold to Baton Rouge Equipment Co., Inc. one Champion Carrier Model 6613-S-B, on which was mounted a Bucyrus-Erie H-5 hydrocrane. By invoice dated March 18, 1959, Baton Rouge Equipment in turn sold the unit to Capitol City Erectors, Inc., through its President, C. W. Briggs, Jr., who selected said equipment from a brochure showing the carrier and its specifications. Prior to the accident of August 5, 1960, on which plaintiff's suit is based, the front axle assembly of the said unit had failed on several occasions. Twice repairs were made by the Baton Rouge Equipment Company, Inc. in its capacity as a servicer of heavy equipment, at the request of Capital City Erectors, Inc. The third time, in May of 1960, Capital City Erectors, Inc. itself made repairs to the equipment, after which Mr. Briggs informed Baton Rouge Equipment Company, Inc. that the front axle of the unit was overloaded.
The Revised Civil Code provides:

ART. 2520Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.

ART. 2534The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale.
This limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.
Nor where the seller, not being domiciliated in the State, shall have absented himself before the expiration of the year following the sale; in which case the prescription remains suspended during his absence.

ART. 2545The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages.

ART. 2546In this case, the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice.
This discovery is not to be presumed; it must be proved by the seller.
This rule is set forth in the case of Bayhi v. S. H. Kress & Company, 158 So.2d 270 (La.App. 4th Cir. 1963) where the Court stated:
"10 LSA-C.C. Arts. 2534, 2545 and 2546, fix the liability of a seller of defective goods, including damages therefor, and the time in which suit may be brought thereon, at one year running, at the latest, *763 from the date of discovery of the defects. Crowley Grain Drier, Inc. v. Fontenot, La.App., 132 So.2d 573, 577; Walton v. Katz & Besthoff, Inc., La.App., 77 So.2d 563; Bresler v. Nugent, La.App., 134 So.2d 694; Sterbcow v. Peres, 222 La. 850, 64 So.2d 195; Lloyd v. Pan Air Corporation, La.App., 139 So.2d 1."
There is no question but what the plaintiff's insured was well aware of the defects in this vehicle more than one year prior to the filing of this suit.
It is therefore clear from an examination of the record that the plaintiff's contention that this is an action of contract, is not borne out by an examination of his pleadings, it being well settled the law of this State is that an applicable prescriptive period is to be determined by the character of the action as revealed by the allegations of the petition. Lewis v. Republic Supply Company, 155 So.2d 200 (La.App., 1st Cir. 1963); Victory Oil Company v. Perret, 183 So.2d 360 (La.App., 4th Cir. 1966). There is no question but an examination of the record clearly shows that the transaction involved herein was one of a sale and the relationship is one of buyer and seller.
Regarding defendant Champion Carriers, Inc. and its insurer Liberty Mutual Insurance Company, the case is even stronger that ten year prescription under contract does not apply, as there is nothing whatsoever in the record to indicate there was any contract at all between the plaintiff's insured and the defendant Champion Carriers, Inc. The record discloses that the defendant Baton Rouge Equipment Company ordered and Champion Carriers, Inc. furnished its Carrier Model 6613-S-B, on which an H-5 Hydrocrane, manufactured by Bucyrus-Erie Company (which was not owned by Champion Carriers), was mounted in accordance with its customer's instructions and that at no time did a contract ever exist between Capital City Erectors, Inc. and Champion Carriers, Inc. Champion's only contract was between it and Baton Rouge Equipment Company which ordered the carrier.
Plaintiff's contention that although Mr. Briggs knew the axle was overloaded he did not know there was a defect in the unit, is not borne out by the record. There is no question but what Mr. Briggs knew of the condition of the axle and knew it was not sufficient to carry the weight of the machine. The record clearly discloses that after the machine was weighed in the latter part of May of 1960, there was a telephone conversation between Mr. Briggs and Mr. Steele of Champion, wherein Mr. Steele recommended corrective steps be taken by placing a larger driving axle under the unit. Even though Mr. Briggs had the benefit of this recommendation, and admitted it, the record clearly shows that he continued to operate the equipment without making any changes recommended by Champion's representatives.
It is well settled that all that is required for the commencement of running of prescription is "the acquisition of sufficient information, which if pursued, will lead to the true condition of things." Pachi v. Kammer, La.App., 130 So.2d 417. See also Reymond v. Sumrall, 67 So.2d 925, wherein this Court held as follows: "The prescription commenced to run when the plaintiff had sufficient knowledge to put him on inquiry and on his guard to ascertain the true facts."
Regardless of whether or not the prescriptive period of one year would be in tort, as claimed by the plaintiff, or in redhibition, as held by the Trial Court and affirmed herein, the facts clearly show that prescription of one year would have run by the time of the filing of the suit. It would be unrealistic, even if it was held that this was an action in tort, to hold as plaintiff contends that the prescription only commenced to run at the time of the accident of August 5, 1960, when the record clearly shows that the machine was involved in similar accidents on August 27, 1959 and *764 May 10, 1960. Nor is this Court impressed with the analogy attempted to be drawn by the plaintiff of the continuous trespass rule, for in this case there is no continuous tort involved.
The last issue to be passed upon by this Court deals with the issue raised by the defendant-appellee Liberty Mutual Insurance Company in its answer to the appeal to the effect that its exception of no cause of action should have been sustained on the grounds that there was no coverage applicable to plaintiff's case.
There were three policies of insurance issued by Liberty Mutual Insurance Company to Champion Carriers, Inc. The one which we feel Liberty Mutual is predicating its case on is the comprehensive general liability policy. The Endorsement No. 1 of this policy provides that "It is agreed that the policy does not apply to the products hazard as defined therein." In addition, under the Exclusions we find this:
"This policy does not apply:
"(a) to liability assumed by the insured under any contract or agreement except * * * (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products; * *."
Under Conditions this policy defines "products hazard" as follows:
"The term `products hazard' means (1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold; * * *."
Under Exclusions (h)(4) we find the following excluded from this policy:
"any goods, products or containers thereof manufactured, sold, handled or distributed on premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises."
There is no question but what the accident happened away from the premises of the insured. While the crane was mounted on the truck by Champion Carriers, Inc., it was not a "products" of Champion Carriers, Inc. However, Champion Carriers, Inc. handled the product and the evidence clearly discloses that it was mounted on the truck by them under the instructions issued by Bucyrus-Erie Company.
Counsel for the insurance company relies on the case of Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Co., 189 Kan. 528, 370 P.2d 396 (1962). In that case Kendall Plumbing, Inc. entered into a contract to install a heating and air conditioning system in a building in Wichita, Kansas. In connection with the installation of the system, Kendall purchased from two separate manufacturers a refrigeration unit and a "Square D Starter." The only connection between the installed refrigerator unit and the "Square D Starter" was electrical wires. At the time of the installation, Kendall failed to make some necessary settings within the starter. About two months after the installation was completed, this failure to make the proper settings resulted in damage to both the refrigerator unit and the "Square D Starter". At the time of the accident, Kendall had a liability policy with St. Paul Mercury Insurance Company which provided for products liability coverage. The policy also contained *765 an exclusion provision which excluded from the coverage of the policy damage to or destruction of "Any goods or products manufactured, sold, handled, or distributed by the Insured or work completed by or for the Insured out of which the accident arises." Because of the quoted provision, Kendall paid for the damages to the "Square D Starter" and conceded that there was no liability on the part of the insurance carrier for damages to the starter because of the exclusion in the policy. Kendall likewise paid the building owner for the damage to the refrigerator unit but sued St. Paul Mercury Insurance Company for reimbursement of the amount so paid, claiming that the exclusion did not apply to the refrigerator unit. Insofar as the instant case is concerned, the refrigerator unit is comparable to the Bucyrus-Erie crane. The District Court dismissed Kendall's suit against the insurer on the grounds that the exclusion in the St. Paul policy applied to both the starter and the refrigerator unit. Kendall then appealed to the Supreme Court of Kansas. In affirming the trial court and in holding that the exclusion of the St. Paul Mercury policy applied to both the starter and to the refrigerator unit damage, the Court stated:
"Appellant contends that the exclusion provision excludes only the defective part which caused the injury but does not exclude other items handled or installed by it which were damaged by the defective item. This contention cannot be sustained. The exclusion provision definitely states that any goods or products handled or work completed by the insured are excluded. It is clear that the policy was intended to cover only damage to property or items which had not been handled by appellant. Goods or products handled by it, or work completed by it, were specifically excluded."
We believe that in the present case there is no coverage under the comprehensive general liability policy.
Another policy issued by Liberty Mutual to Champion Carriers, Inc. is what is denominated an Automobile Policy or "the garage policy." This policy contains an endorsement entitled "Automobile Factory Defect Coverage" which provides coverage for certain liability in the following language:
"In consideration of the premium computed at the rates and in the manner hereinafter provided, it is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability, applies with respect to the liability imposed by law resulting from an accident caused by a defect in the workmanship or material in the automobiles manufactured, assembled, rebuilt or repaired by the insured, subject to the following provisions * * *."
If there were no "following provisions," the automobile factory defect coverage endorsement would afford coverage for the claims asserted by the plaintiff against Champion Carriers, Inc. in this case for the claims are certainly based upon a property damage claim resulting from an accident caused by an alleged defect in the workmanship or material in the automobile manufactured and assembled by the insured. However, item 2 of the Automobile Factory Defect Coverage endorsement reads as follows:
"The insurance afforded hereunder does not apply to the damage to or destruction of the automobile in which the defect existed."
In other words, excluded from the Automobile Factory Defect Coverage is any claim for damage to the automobile manufactured or assembled by Champion Carriers, Inc.
The third policy issued by Liberty Mutual to Champion Carriers was an automobile Policy Combination Basic. This combination policy covers loss to vehicles owned or in the possession of Champion Carriers, Inc. It also provides for coverage against theft of automobiles owned by Champion Carriers or certain other vehicles in which *766 Champion Carriers might have an insurable interest. We believe it is conceded that this policy has no application to the coverage herein.
Therefore, for the foregoing reasons, we believe that our brother below erred in overruling the exception of no cause of action, and to that extent the judgment herein is reversed and the exception of no cause of action filed by Liberty Mutual Insurance Company based on lack of coverage is hereby sustained. In all other respects the judgment of the lower Court is affirmed.
Reversed in part.
Affirmed in part.

ON REHEARING
SARTAIN, Judge.
We felt a rehearing on the application of Champion Carriers, Inc. was in order to clarify our previous opinion wherein we reversed that portion of the trial judge's action below overruling Liberty Mutual Insurance Company's peremptory exception of no cause of action. Liberty Mutual is Champion's insurer and had issued three policies. The policy here concerned is the comprehensive general liability policy together with certain exclusionary clauses, which we quote herewith for convenience purposes:
"This policy does not apply:
"(a) to liability assumed by the insured under any contract or agreement except * * * (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products; * * *."
Under Conditions this policy defines "products hazard" as follows:
"The term `products hazard' means (1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division 1 of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold; * * *."
Under Exclusions (h) (4) we find the following excluded from this policy:
"(h) under coverage B [property damage], to injury to or destruction of * * (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises; * * *."
Champion in its application for a rehearing urged that we erred in reversing the trial judge who had previously overruled the exception for in so doing we considered evidence adduced on the merits which was not available to the trial judge and could not have been considered by him and therefore should not have been considered by us. Champion further urges that our consideration of the evidence and facts developed during the course of the trial in determining the validity of the exception is violative of the established rule that well pleaded allegations of fact in a petition are accepted as true for the purpose of considering the merits vel non of an exception of no cause of action.
The minutes of the trial court reflect that in overruling Liberty Mutual's exception of no cause of action the judge a quo felt bound by our decision in Thibodeaux v. Parks Equipment Company, et al., 140 So. *767 2d 215, decided March 14, 1962, rehearing denied May 4, 1962, certiorari denied June 15, 1962, wherein policy provisions identical to those in the instant matter were held to indicate coverage thus warranting the dismissal of an exception of no cause of action.
Our original opinion did indicate that we had in fact considered certain evidence that was adduced during the course of the trial on the merits and to this error we plead guilty. Accordingly, we shall here limit our consideration of the issues to the pleadings as they stood on January 28, 1963, the date the exception was argued before and judgment rendered thereon by the trial judge. In this respect we specifically note that the applicable insurance policies were filed in the record on that date and were therefore a part of the pleadings to be considered by the trial judge and now by us in determining the merits of the exception. Thus, while the general rule is as stated by Champion in its application and above referred to, it is equally clear that where evidence, documentary in form, is offered without objection during the course of the hearing on the exception, the pleadings are thereby enlarged and as enlarged may be considered by the court. Barr v. Freeman, La.App., 175 So.2d 649; Roy O. Martin Lumber Co. v. Saint Denis Securities Co., 225 La. 51, 72 So.2d 257; Williams v. Marionneaux, 240 La. 713, 124 So.2d 919; Breaux v. Pan American Petroleum Corp., La.App., 163 So.2d 406.
The question then is whether or not the ruling in the Thibodeaux case is controlling of the issue presented in the instant matter. Stated another way are the facts as alleged in the Thibodeaux case distinguishable from the facts alleged originally and through supplemental pleadings in this present action.
In the Thibodeaux case, plaintiff sought recovery for personal injuries and special damages allegedly resulting from the manufacture of a defective valve. There the trial judge sustained an exception of no cause of action, concluding that the exclusion of products hazard liability under the terms of the policy precluded recovery from the insurer. We reversed the trial judge on this point and stated that the clause was vague and ambiguous and should not be construed as "all-inclusive so as to relieve coverage * * * of all claims of the insured arising directly or indirectly out of goods or products of the named insured." 140 So.2d 215, page 218.
In our original opinion we chose to adhere to and follow the reasoning and interpretation of the clause as set forth in Kendall Plumbing, Inc. v. St. Paul Mercury Insurance Co., 189 Kan. 528, 370 P.2d 396 (1962). We did not cite the Thibodeaux case nor did we endeavor to distinguish the Thibodeaux and Kendall cases or the Thibodeaux case and the present one. On examination, these cases are clearly distinguishable. In the instant case and also in the Kendall case recoveries were sought for damages to the items "manufactured, sold, handled or distributed by the named insured". And at first glance it would appear that in every respect the two are analogous.
The Thibodeaux case differs principally from the Kendall and present cases because it was an action for personal injuries and special damages sustained by a third party and was not for recovery for damages to the item "manufactured, sold, handled, or distributed by the named insured." However, in the Thibodeaux case, we cited Kendrick v. Mason, 234 La. 271, 99 So.2d 108; King v. Mason, La.App., 95 So.2d 705; and, Swillie v. General Motors Corp., et al., La. App., 133 So.2d 813, each involving the issue of products hazard exclusion. The Kendrick and King cases arose out of the same accident and were against the same defendants. In referring to the Kendrick case, decided by our Supreme Court, we recognized and conceded that the first portion of the clause excluding products hazard liability applied and referred to the warranty of goods or manufactured products. *768 The clause was held to be inapplicable in these two cases because King was a contractor and handled no products, thus the general liability provisions of the policy governed. The court stated: (99 So.2d 108, page 117)
"* * * The tort which was the proximate cause of the damages sustained by plaintiff was in fact and in law committed during the performance of the construction contract. Both the accident and the injuries resulting therefrom were brought about not from the completed and accepted sewer system but from the direct result of the acts of negligence committed during its construction. The policy covering said accidents for which premiums were charged was then in full force and effect; and the conclusion is inescapable that the insurer is therefore liable in solido with the insured, Mason."
As stated above, in our Thibodeaux decision we cited with approval from the Swillie case and a careful review of that case shows that it was one for personal injuries (which would bring it within the purview of the Kendrick and King decisions) and also for recovery for damages to the vehicle handled and assembled by the defendant (which would exclude it from the Kendrick, King and Kendall cases and coverage as expressed in our original opinion). It is noted that in the Swillie case, plaintiff was successful in recovering for both personal injuries and for damages to his vehicle which included the truck and double loadster. Our brothers of the Third Circuit concluded (133 So.2d 813, page 821)
"* * * Under these facts, it is our opinion that the manufacture of the double loadster was a separate and distinct operation from the installation of the double loadster and brake lines and the evidence is clear that it was during the installation that the defective flare was placed on this truck by employees of Natchez Steel Products Company, Inc."
Further, concerning Kendrick v. Mason, supra, they stated: (133 So.2d 813, page 823)
"Applying the law of the Kendrick case to the case at bar, it appears clear that when Natchez Steel Products Company, Inc. installed the defective brake line it was not handling or selling a product, but was simply performing work, that is selling services for which it charged $100.00. * * * In other words, as we understand the Kendrick case, it is clear authority for the proposition that both part (1) and part (2) of the products hazard definition apply only to an insured who is handling products and has no application whatever to an insured who is only performing work, that is, simply selling services."
We still adhere to our original opinion as to the effect of the products hazard exclusionary clause and agree with the decision in the Swillie case to the extent that it maintained coverage for personal injuries. However, we disagree with the Swillie decision insofar as it may be deemed authority for a liability coverage of "goods or products manufactured, sold, handled or distributed by the named insured * * *." See Poynter v. Fidelity & Casualty Company of New York, La.App., 140 So.2d 42, wherein plaintiff sought via declaratory judgment an interpretation of an insurance policy which excluded "products-completed operations hazard".
In the recent case of Tillery v. Pelican Ice and Cold Storage, Inc. (La.App. Fourth Circuit), 184 So.2d 65 is contained pertinent language which concerns the Kendrick, King, Swillie, Poynter and Thibodeaux cases: (184 So.2d 65, pages 68, 69)
"The first four of the five cases cited by plaintiffs are clearly distinguishable on the facts from the instant case. In each of these four cases the Courts found a distinction between the manufacture, sale, handling or distribution of a product and *769 the sale of a service. The Courts held that since the insurance policies (similar or identical to the one involved here) did not plainly include the sale of a service within the definition of "Products-Completed Operations" the exclusion of that particular hazard did not render the insurance inapplicable to liability arising from the sale of a service."
* * * * * *
"From the care taken by the Courts in the Kendrick, Swillie and Poynter cases to distinguish between the manufacture, handling or sale of a product and the sale or performance of a service it is fair to infer that there would have been no coverage if there had been involved therein the manufacture, sale or handling of a product rather than the performance of a service."
An examination of the above cited cases clearly evidences to us that our courts have consistently made a distinction between the manufacturing process and the rendering of a service as both relate to the applicability of products hazard liability. The distinction made by us in our original opinion that the policy was intended to cover only damage to property or items which had not been handled by the insured and was not intended to cover such goods or products as were handled by the insured has not heretofore been passed upon by an appellate court of this state. Such a distinction has been made in other jurisdictions. Liberty Bldg. Co. v. Royal Indemnity Co., 177 Cal.App.2d 583, 2 Cal.Rptr. 329; Cal.App., 346 P.2d 444; Heyward v. American Casualty Co. of Reading, Pa., D.C., 129 F.Supp. 4; Volf v. Ocean Accident & Guarantee Corp., Ltd., 50 Cal.2d 373, 325 P.2d 987; Hauenstein v. St. Paul-Mercury Indemnity Co., 242 Minn. 354, 65 N.W.2d 122.
On reconsideration, it appears to us that the trial judge did not commit error in relying upon the Thibodeaux case in view of the fact that in the Thibodeaux case we cited and quoted from Swillie v. General Motors Corporation, supra. A careful examination of plaintiff's petitions, original and supplemental, clearly shows that plaintiff alleged sufficient facts to conclude that Champion, Inc. performed a service for plaintiff's insured's vendor by mounting on its Champion Carrier a hydrocrane acquired from Bucyrus-Erie Company, thus bringing the pleadings within the rule of the Swillie case. In consideration of an exception of no cause of action, it is fundamental that the court consider every reasonable hypothesis of facts admissable under the pleadings. Poynter v. Fidelity & Casualty Company of New York, supra; Steagall v. Houston Fire & Casualty Ins. Co. et al., La.App., 138 So.2d 433; Rogers v. T. L. James & Co., La.App., 128 So.2d 829; Granger v. Stine, La.App., 127 So.2d 228; Bergeron v. Greyhound Corporation, La.App., 100 So.2d 923.
Accordingly, for the above and foregoing reasons that portion of our original opinion wherein we reversed the decision of the trial judge overruling defendant's, Liberty Mutual Insurance Company, exception of no cause of action is herewith recalled and vacated, and the judgment of the district judge overruling said exception is hereby affirmed.
Original opinion recalled in part, judgment of the lower court affirmed.
LOTTINGER, Judge (dissenting):
I respectfully dissent from the majority herein.
I am of the firm opinion that the exception of no cause of action filed on behalf of Liberty Mutual Insurance Company should be sustained.
There is no question that the insurance policy in controversy was offered and introduced without objection during the course of the hearing on the exception, and Liberty *770 Mutual contends that exclusion (h) (4) eliminates coverage under this policy. That exclusion reads as follows:
"This policy does not apply:
(h) under coverage B (property damage), to injury to or destruction of * * * (4) any goods, products or containers thereof manufactured, sold, handled or distributed * * * by the named insured or work completed by or for the named assured, out of which the accident arises." Emphasis mine.
Now this action is based on a subrogation for the damages to property upon which the named insured "sold, handled or distributed", "or work completed by or for the named assured, out of which the accident arises."
We must bear in mind that this suit is for the recovery of property damage and not personal injury. My colleagues cite as authority cases dealing with personal injury but I must say that they are not applicable in the instant case because here we are dealing with an exclusion of the policy which excludes recovery for property damage.
There is no question that the policy is properly before us on the consideration of this exception and that there is no question but that the allegations of the petition set forth the fact that the named assured sold, handled or distributed the goods and products damaged as well as that the named assured completed works on the goods and products out of which the accident arose.
For these reasons I am of the opinion that the exception of no cause of action should be sustained and I must dissent.